## DOAN v. METCALF ET AL.

1. **Water Power**: PARTITION. Where different parties have rights to determinable portions of water used for propelling machinery, their interests may be partitioned when it is practicable to do so.

2. ———: CONVEYANCE. Where the grant of a part of a water power stipulated that the grantee should have "the right to use water to the amount of the issue of the wheel now in use in said mill, supposed to be six hundred inches, more or less, of water": *Held*,

   1. That the amount of water which the grantee might use was to be measured by the capacity of the wheel in the mill at the time of the execution of the deed.

   2. That the term in the deed specifying an amount—six hundred inches—was descriptive only and not a limitation.

   3. That the grantee was not limited to the use of one wheel, but could put in operation any number, provided they did not use in the aggregate more water than the issue of the one wheel originally in the mill.

3. ———: ———: MEASURE OF POWER. In apportioning the amount of water permitted to be used under a grant a fixed and unvarying measure should be adopted, and an allowance of the water requisite to carry "two sets of burrs and the necessary machinery for bolting," does not furnish such measure.

4. ———: APPORTIONMENT OF: REFEREES. In an action for the partition of a water power, the partition should be made by referees under rules established by the court.

5. **Practice**: PRAYER FOR RELIEF. Where in an equitable action the defendant, besides denying the allegations of the petition, pleads that he has sustained injury at the hands of the plaintiff in the matter respecting which relief is sought, but prays for no relief himself, no ground is afforded by the defendant's alleged injury for denying to the plaintiff the relief he seeks.

*Appeal from Jones District Court.*

THURSDAY, JUNE 7.

IN November, 1872, plaintiff filed his petition in chancery wherein H. C. Metcalf was made a defendant, alleging that in 1870, plaintiff was the owner of certain premises situated upon the Wapsipinicon river, in Jones county, whereon were two mills propelled by power obtained from the water of the river. In that year he sold and conveyed to defendant a portion of the premises whereon was situated one of the mills, a saw mill, the other being a flouring mill. The deed conveying this property, after proper descriptions of the premises, grants the right to use water power in the following words: "Together with the right to use water to the amount of the issue of the wheel now in said saw mill, supposed to be 600 inches, more or less of water, being hereby intended to grant or convey so much of the water power of the Wapsipinicon river as above mentioned."

At the same time the parties entered into a written agreement, pertaining to the premises and rights transferred by the deed, in the following language:

"*Articles of Agreement made and concluded this 21st day of May, A. D. 1870, by and between H. C. Metcalf and Milton Doan, both of Jones County, Iowa, Witnesseth:*

"For and in consideration of a certain deed being this day given by said Doan to said Metcalf, and other valuable considerations, said Doan hereby agrees to use due diligence in keeping in good repair the mill dam and flume on the Wapsipinicon river, near the town of Anamosa, at the mills known as the Anamosa City Mills, and the said Metcalf hereby agrees to pay one-sixth part of the cost or expense of the same, and further agrees to keep open the mill yard as it

now is; and said Doan hereby agrees to keep open a mill yard for the use of the mills, sufficient to accommodate the mills. It is mutually agreed that either party may shut off the water for a reasonable time for the purpose of making repairs or improvements on the mills or flumes, and in case of very low water the said Metcalf shall have one-sixth of the water. Said Doan agrees to keep open the land for the public, between Military road and the lot with building on, this day conveyed by said Doan to said Metcalf, as a common situate on lot three (3), section ten (10), township 84 north, range 4 west. And said Doan gives said Metcalf the privilege of widening the race, or digging it deeper between the mills, and said Metcalf shall have, and said Doan hereby sells to said Metcalf, all the tools and fixtures in and about the said saw mill; said Doan is to have use of the saw mill for two weeks from this date. And we hereby bind ourselves, our heirs and assigns by this contract, and in witness whereof we have hereunto set our hands this 21st day of May, A. D. 1870.

H. C. METCALF.<br>MILTON DOAN.

" Duly acknowledged and recorded May 31, 1871."

The petition alleges that under the deed and agreement the defendant acquired a right to no more water than is necessary to operate the wheel then in the saw mill conveyed by the deed, which was 500 square inches of water, except that in very low stages of water defendant had the right to use one-sixth of the water secured by plaintiff's dam and flume; that plaintiff is the owner of the dam and flume, and the flouring mill, operated by four water wheels, and situated about sixty feet above defendant's mill on the same flume, and that the head of water, at the time of the transfer of the saw mill to defendant, was about four feet.

After these allegations the petition proceeds, in the following language, to set out the violation by defendants of plaintiff's rights and the relief claimed:

"That subsequently the defendants removed the old wheel from said saw mill, upon the site of which he also erected a

flouring mill and placed therein three other wheels of different construction, and using in the aggregate a much greater quantity of water than was used by the old wheel, and that defendants are now operating their mill with all of said new wheels at the same time, and are using and drawing from said flume a much greater quantity of water than they are entitled to, whereby the defendants are carrying on a rival mill in the immediate vicinity of plaintiff's mill, to the injury of plaintiff's business, which defendants would not be able to do but for the excessive quantity of water used by them over and above the amount specified in the deed and contract; that at all times there is not sufficient water for the operation of both mills, and that, by reason of the excessive and unlawful use of said water by defendants as aforesaid, plaintiff is frequently unable to use and operate his mill to a great extent; that at times when the water supplying said mills is very low, and not sufficient for the operation of both mills, the defendants have willfully and purposely opened the gates of their wheels and allowed the water to run to waste, and when their mill has not been in operation, and with a purpose to injure the plaintiff and prevent him from the operation of his mill, and by so doing the defendants have drawn down the head of water in the flume to such an extent that plaintiff has been unable to operate his mill. All of which the defendants would be unable to do with a wheel or wheels whose issuing capacity was no greater than that of the old wheel; that a true and just division of said water can be made whereby each party may be protected in the full enjoyment of his rights; that plaintiff has no speedy and adequate remedy at law, and that by reason of the acts of defendants aforesaid plaintiff has and will be subjected to irreparable injury; and asks that defendants be restrained from the use of more than five hundred square inches of water, or so much as was issued by the old wheel while in operation, and from the use of more than one-sixth of the water in case of very low water, and for a division or partition of said water, and such other relief, etc."

By an amended petition it is alleged that Charles Coid claims

an interest in the property in controversy, and he is made a defendant, and relief is sought against him.

The defendant, Metcalf, answered the petition, admitting the execution of the deed and contract set out in plaintiff's petition, but denying all other allegations therein. Coid also answered, making like admissions and denials. He claims to be a tenant in common of the premises with Metcalf, and alleges that defendants are under the deed and contract entitled to use seven hundred and fifty square inches of water, except in very low water they are entitled to only one-sixth of the water when the dam is kept in good repair. The answer concludes with this language: "By virtue of said contract plaintiff is bound to keep the dam in good repair, and if so kept the head would never sink to low water, and there would be sufficient to supply defendants with the full amount of water as measured by the capacity of the old wheel. The plaintiff has suffered the dam to be greatly out of repair for a great portion of the time, and allowed the water to run to waste, to the great injury of the defendants."

No affirmative relief is prayed for in the answers of the defendants, neither answer being made a cross-petition.

Upon the first hearing the cause was submitted to the court for trial upon oral evidence and depositions. The court, upon the evidence, without appointing referees to set apart the shares of the parties in the water of the dam and flume, ordered a decree to be entered securing to defendants water sufficient to create power for the running of two buhrs and the necessary bolting machinery therefor and enjoining them from opening their gates and allowing water to waste when not operating their mill unless necessary to clear out the ice or other obstruction, which, however is not to be done when plaintiff's mill is in operation. From the decision plaintiff appealed.

*E. Keeler*, for appellant.

*Shaw & McCarn*, for Metcalf, appellee.

*King & Deitz*, for Coid, appellee.

BECK, J.—I. The relief sought in the petition is the settlement of the interest of each party in the water conducted by the flume from plaintiff's dam, and a partition of the water allotting to each his just share. In cases of this kind when parties have rights to determinable portions of water used for propelling machinery, their interests may be partitioned when it is practicable to do so. *Cooper v. The Cedar Rapids Water Power Co.*, 42 Iowa, 398.

1. WATER power: partition.

II. In this case the first thing to be determined is the interest of the respective parties in the water appropriated, by means of plaintiff's dam and flume, to the purposes of propelling machinery. The plaintiff is entitled to all the water except that part granted under the deed and agreement between the parties. We will proceed to determine the interest of defendants under these instruments.

2. ——: ——: conveyance.

The grant to defendants is, in the language of the deed, " the right to use water to the amount of the issue of the wheel now in said saw mill, supposed to be six hundred inches, more or less, of water." This and another clause of the instrument must determine the extent of defendants' rights. It is obvious that it was intended to convey sufficient water to propel the wheel described, when used in driving the machinery which it had the capacity to run. The dimension and structure of the wheel were such that, with a sufficient supply of water, it had capacity to propel a known quantity of machinery, or rather a quantity that may be determined under the laws of dynamics. It was not the intention of the parties that the wheel should be run without machinery attached thereto, nor that it should be run with less machinery than it had capacity to propel, when used to the extent of the right conveyed by the deed. The defendants, then, took by the grant the right to a stream of water sufficient to propel the quantity of machinery which could, in its proper operation, be moved by the wheel in use at the date of the deed. The wheel thus becomes the instrument for measuring the quantity of water to which defendants are entitled.

It is very plain that this quantity is not to be limited to 600 inches, for the very language of the instrument exhibits

uncertainty in the minds of the contracting parties as to that number, which was used simply in description of the wheel which was to be the measure of the water granted. If this description be incorrect or fail, the thing meant, the wheel, if it can be identified, will control as to its capacity, rather than words clearly used with the understanding and admission, on the part of both parties, of their uncertainty.

We are not required here to determine upon the methods and formulas of machinists whereby they measure water-power by superficial inches, or to make any inquiry upon that subject. Such methods and formulas, it appears by the evidence, are used. It is quite apparent that a water wheel of given dimension, propelling its proper quantity of machinery, will use a determinable quantity of water, all necessary conditions, as the height of the head of water, etc., being known. This water issues from the wheel, and is, therefore, aptly called in the deed "the issue of the wheel." A great deal of learning and experience were exhibited by the witnesses at the trial, upon the subject of the methods and formulas to be adopted in determining the quantity of water used by wheels of different constructions. We may be permitted to say that some of the methods explained in the testimony were rather arbitrary than based upon scientific principles. This remark, we think, will be justified when we call attention to the fact that, by some of them, the quantity is indicated by superficial inches without taking note of time, or the velocity of the water. But we are satisfied, and this conclusion is drawn from the evidence in this case, that the issue of water from a wheel may be determined, proximately at least, with sufficient accuracy for practical purposes. Experience and mechanical skill, aided by the laws of hydraulics, may reach such result. We are not required, in view of the disposition we shall make of the case, to determine now the manner or methods to be adopted in ascertaining the issue of the wheel which is made the measure of the quantity of water granted to defendants. Those charged with the duty of setting apart, or otherwise prescribing, the quantity of water to which defendants are entitled will do this. We make one suggestion that readily occurs to the

mind in considering the provisions of the grant. The defendants, as we have said, are entitled to a sufficient supply of water to run the wheel with the proper quantity of machinery attached thereto. This quantity may vary with the head of water in the flume or dam, and, consequently, with the variation of water in the stream. If this be so, due account must be made of the fact, so that defendants, at all times, when under the contract they are entitled to the full quantity of water, may use the amount necessary to propel the machinery. If, therefore, the water for defendants' mill be set apart by gates or bulkheads, in the flume, due arrangements must be provided to meet this condition. But in our judgment, the just and more simple manner of partitioning the water is by means of the water wheels used by defendants. Let the quantity of water issued by the old wheel be determined; the water issued by the wheels in use by defendants must be no more, and the wheels to be used by defendants must require no more water than did the old wheel. Defendants may desire to use machinery which would require the construction of other water wheels than those he is now using. There can be no objection to his doing so, but he can use at no time a greater quantity of water than indicated. Therefore, he will not be permitted to run wheels at the same time which actually use a greater quantity. Wheels may be idle when not used as directed by those rules.

III. We have seen that the measure of defendants' rights is found in the old wheel, and that such measure may be

3. ——: ——: applied to the present and future use of the water
measure of
power. conveyed by the grant. This conclusion was reached by the District Court, but we are of the opinion that the result of the application of the rules adopted was not justified by the evidence; in other words, there was an error in applying practically the rules.

By the decision of the District Court the defendants were permitted to run two sets of buhrs and the necessary machinery for bolting. It may be that the power to propel the machinery in ordinary use is approximately equal to that imparted by the old wheel. But the dimensions of the buhrs and the quantity of grain to be ground upon them within a given time

will, of course, vary the quantity of water demanded. These conditions should be settled in order that this manner of controling the use of the water may operate justly and uniformly. But in our opinion there may be other methods, among them the one last mentioned above, that would more equitably apportion the water.

IV. The District Court failed to make any provision in the decree for setting apart, or securing to defendants, one-sixth of the water of the flume in very low water, under the clause of the contract providing for such a contingency. Whatever may be the importance of the rights of the parties under this clause, they ought to be determined by the decree and their enforcement provided for, as full relief cannot otherwise be given to the parties. We have no doubt that proper arrangements may be provided, and their observance required in the decree, which will enforce the provision of the contract.

V. The statute provides that, in actions for partition, referees shall be appointed to set apart the shares of the respective parties. Code, § 3290. Doubtless their appointment is not required in cases wherein, from the nature of the property and the character of the partition which the law makes, they can render no aid to the court in the just division of the property; and such cases may sometimes arise. Such a case would occur where the shares of the parties, and the description thereof, are settled by the pleadings or by agreement of parties. But in ordinary cases where the shares of the parties, and the description thereof, are not settled by the law or consent, the services of referees are essential to the just partition of property. While the court may fix the rights and interest of the parties in the property of which partition is sought, it is necessary that the rules settling their rights and interests be applied to the property. This involves division of the property—the quantity set apart to the parties to correspond to the value of the interest of each. In the simple case of the partition of lands, this cannot be done without inspection of the property and its division into separate tracts. This proceeding would require the application of knowledge of the quality and value of lands, and the application of the science

*4. ———: apportionment of: referees.*

of surveying. But these things could not be done by the court without the aid of proper officers. The law has provided for the appointment of referees, officers of the court who shall thus aid in the administration of justice in such cases. In our opinion the relief prayed for by plaintiff cannot be granted, and the rights of defendants properly protected, without the aid of referees, in this case. Certain we are, that upon the evidence now before us we could render no decree that would secure to the parties such approximate justice as they would obtain under the action of referees. They are entitled to the measure of exact justice, as nearly as the courts can, under the practice and proceedings authorized by law, afford them. We conclude, therefore, that the parties were entitled in the court below to the benefits resulting from the services of referees—competent and skillful men in the departments of mechanics and science, the laws whereof must be applied to the subject of this suit for a proper determination of the questions which will arise in partitioning the water of the flume flowing to the mills of the respective parties.

VI. No question as to the form of the proceeding has been made by the parties; we do not, therefore, consider it.

VII. The petition alleges that defendants wantonly and unnecessarily permit water to run to waste to plaintiff's injury, and prays that defendants be enjoined from further acts of the kind. The evidence supports the allegation of the petition in this respect, and the decree of the District Court granted the relief prayed for in the petition. Pending the proceedings for the final disposition of the case, this relief should be continued to plaintiff under a proper interlocutory order of the District Court, upon the evidence now in the case.

VIII. The answer of one of the defendants alleges that plaintiff has failed to keep in repair the dam, as he is bound 5. PRACTICE: to do under this contract. No relief is prayed for prayer for relief. based upon this allegation. If it be true, defendants may have a proper remedy for the injury they sustain. The nature of the remedy, or the manner of pursuing it, is not now a proper subject of inquiry. But the allegations in the

answer, without prayer for relief, afford no foundation for denying to plaintiff the proper relief sought in his petition.

IX. The decision of the District Court is reversed and the cause is remanded for further proceedings to accord with this opinion. These will be as follows:

1. A decree settling and confirming the rights and interest of the parties to this effect: the defendants to be declared entitled to the quantity of water required to supply the water wheel used at the time of the execution of the deed, when running the machinery it was intended to propel. The dimensions, pattern, character, manner of construction, name of wheel, name of inventor and manner of operation, shall be found and declared in the decree, or so many of these things as shall be necessary to determine its capacity, and the issue of water therefrom. The decree shall further declare that in times of very low water defendants shall be entitled to one-sixth of the water.

2. The water not thus secured to defendants shall be declared to be the property of plaintiff.

3. The decree shall appoint competent referees to set apart and partition the water to the respective parties, in accord with their interests and rights settled therein as above directed.

4. Upon the coming in and approval of the report of the referees, a final decree to be entered confirming it and finally settling the rights of the parties to the water allotted therein to each party.

5. The decree may settle the obligation of plaintiff to keep the dam and flume in repair, and of defendant to contribute thereto, and determine whether a remedy may be provided therein for defendant, in case such obligation of plaintiff is not performed, either by defendant making such repairs and bringing his action at law for the cost thereof, or by authorizing him, when the dam is not kept in repair, to use an increased quantity of water. This matter is left for inquiry and determination in the further proceedings which may be had in the court below. It may be that the referees will be able to aid the court in settling the questions growing out of this subject, by their investigations and recommendations.

6.   Other proceedings shall be had which may be necessary and proper for the final disposition of the cause.

The costs of this appeal shall be paid by defendants.

The other costs, together with the costs hereinafter to be made, will be finally taxed and apportioned as to the District Court shall seem just.

The cause will be remanded for further proceedings in the court below in harmony with this opinion.

REVERSED.

ROTHROCK, J.—This cause was tried before the writer hereof, judge in the court below.   It was not then insisted that, this being an action for partition, the plaintiff was entitled to the appointment of referees as a matter of right.   A full examination of the case in this court since the decision in the case of *Cooper v. The Cedar Rapids Water Power Co.*, 42 Iowa, 398, has led me to the conclusion that all these proceedings should be conducted under the statute providing for the partition of property, so far at least as the statute may be applicable.

The right to an undivided interest in the use of water in a stream is real property.   The right to have the property set off, divided or partitioned, cannot be denied.   Sec. 3290 of the Code provides that the court shall appoint referees to make partition into the requisite number of shares, unless it be apparent, or the parties agree, that partition cannot be made.   A party then is entitled to have referees appointed to make partition.   If their report be unsatisfactory to the parties, on good cause it may be set aside and the matter again referred to the same or other referees.   Code, Sec. 3295.

Partition was made in the court below upon what I believe to be the only practicable mode of arriving at any thing like just results.   The decision allowed the defendants, in the present condition of their mill, to operate certain specified machinery then in the mill, and to open their gates sufficiently for that purpose.   This, in my judgment, is as near an approach to a just determination of the rights of the parties as can be attained.

But as I believe the plaintiff has the right to have the report

of referees appointed by the court, I concur in the conclusion reached in the foregoing opinion, still believing that such right will prove barren of any satisfactory results.