## TIMOTHY SHED v. GEORGE R. LESLIE.

The grantor in a deed, which was expressed to be executed for the purpose of having the business of a clothier carried on where the grantor lived and in consideration of five shillings, conveyed to the grantee, and his heirs and assigns, the privilege of drawing from the mill pond, on which the grantor had a grist mill, " water sufficient for carrying one fulling mill and shears for one clothier's shop,—reserving always, in a scarcity of water, sufficient to carry" the grantor's grist mill; *habendum* to the grantee, and his heirs and assigns, so long as he or they should carry on the clothier's business at or near said place, and should be at one sixth part of the expense of erecting and keeping in repair the dam and flume necessary for supplying the pond with water. *Held*, that the grant restricted the use of the water for the purposes of a fulling mill and clothier's works only, and could not be construed as giving to the grantee the right to use the same quantity of water in carrying a carding machine.

*Held*, also, that the grantor and grantee did not thereby become tenants in common in the right to use the water, and that the deed did not restrict the right of the grantor to use the water, not conveyed to the grantee, for other purposes than a grist mill.

In order to render a deposition admissible as evidence, both the certificate of the oath administered to the deponent and the caption must be severally signed by the magistrate, before whom the deposition is taken.

ASSUMPSIT, to recover for the use of water to carry a carding machine owned by the defendant in the village of Wells River, in Newbury, from 1832 to 1847. Plea, the general issue, and trial by jury, June Term, 1849,—REDFIELD, J., presiding.

On trial the plaintiff gave in evidence a deed from Ezra Chamberlin to Josiah Marsh, dated December 6, 1805, conveying one half of the " Governor's farm," so called, excepting what he had before that time deeded to John Quimby and others; also a deed from Josiah Marsh to Josiah & Samuel W. Marsh, dated March 20, 1811, conveying the " old grist mill," so called, and privilege, and the land on the north side of Wells River conveyed by Chamberlin to Josiah Marsh; also deeds from Josiah and Samuel W. Marsh, through several intermediate grantees, to the plaintiff, conveying all the land and water privilege belonging to the grist mill privilege, so called; also a deed from Stedman & Gordon to the plaintiff, dated January 7, 1822, conveying six acres of land, together with the saw

mill, and so much of the dam as pertained thereto, and the privilege thereunto belonging, on the north side of Wells River. The plaintiff also gave evidence tending to prove, that the saw mill, above named, was situated upon the north side of the river, and was occupied by the plaintiff until 1828, when it was destroyed by the water; but that the dam, upon which it was situated, had always been kept in repair by the plaintiff, the defendant, and one Holt, who owned a trip hammer shop; that on the south side of the river the water is taken from the pond caused by that dam, by the plaintiff, the defendant and Holt, and conveyed a few rods into another pond, mostly on the defendant's land, which has been made by constructing a dam across a hollow, on which last dam is a trip hammer shop, near where the grist mill formerly stood, near the east end of the pond, and the water is taken from the north side of the last mentioned pond and carried to the defendant's shop; that previous to the spring of 1832 the defendant carried on the business of fulling and dressing cloth, and in the sping of 1832 he put a carding machine into the same building and took the water to carry the same from the flume, from which water was taken to carry the fulling mill, and has used his carding machine every year since, during the season of carding, which usually commenced about the first of June and ended about the first of September, and has also continued the business of cloth dressing during the usual seasons for that business, but has not used the water to any considerable extent for both purposes at the same time. It also appeared in evidence, that since the carding machine has been put in, the defendant has not used the water for both purposes more than about half the year, and that previous to that time he used it from half to three fourths of the year, and that the quantity required, or used, to carry the carding machine is less by thirty eight inches, than that required to carry the fulling mill, besides seventy inches used to carry the shears. The plaintiff never had a grist mill on the dam, from which the defendant takes his water for his carding machine, but has used the waste water, which runs over the dam, at his tannery about twenty rods below.

The defendant gave in evidence a deed from Ezra Chamberlin to John Quimby, dated April 24, 1797. In the commencement of this deed the grant was declared to be made "for the purpose of having

the business of a clothier carried on where I now live, and in consideration of five shillings." The description of the right conveyed was in these words,—" the privilege of taking and drawing, from the mill pond on which my grist mill now stands, at any one place adjoining a certain piece of land, which I have this day sold said John, southerly of said mill pond, water sufficient for carrying one fulling mill and shears for one clothier's shop,—reserving always, in a scarcity of water, sufficient to carry my own grist mill." The *habendum* was to the grantee, and his heirs and assigns, "so long as he or they shall carry on the clothier's business at or near said place, and shall be at one sixth part of the expense of making and keeping in repair the necessary dam, or dams, and flume, or flumes, for supporting and supplying said pond with water." The defendant also gave in evidence deeds from John Quimby, through several intermediate grantees, to himself, of the same privilege. The defendant also gave in evidence conveyances from Ezra Chamberlin to one Williams of the privilege of water for a trip hammer shop on the same dam. The defendant also gave evidence tending to show, that he put a carding machine into the shop in the early part of May, 1832; and the evidence tended to prove, that he commenced using the same about the tenth of June, 1832. The defendant's evidence also tended to prove, that in the early part of May, 1847, the plaintiff requested the defendant to sign some writing respecting the water privilege,—which the defendant declined to do, saying, at the same time, that he was not aware, that he was using any of the plaintiff's water, or in any way interfering with his right; and that the plaintiff did not then claim, that any bargain had ever been made with the defendant respecting the water, but assigned as a reason for requesting a writing, that the defendant would soon acquire title to the privilege by possession.

On trial the plaintiff offered the deposition of Daniel Patterson, which was objected to, for the reason that the magistrate, by whom it was taken, had not made and signed any certificate, that the oath was administered to the witness. The certificate, that the oath was administered, was written upon the deposition in the usual form, with a space between that and the certificate of the caption, in which the words " Justice of Peace " were written, but it was not signed by the magistrate; but the certificate of the caption, which

immediately followed the certificate of the oath, was in due form, and was signed by the magistrate, and showed, that the deposition was taken upon notice, and that the adverse party attended at the taking.   The objection was overruled.

The defendant requested the court to charge the jury,—1. That the plaintiff's deeds do not show any title in him to the privilege in question.   2. That if he had any title, it was as tenant in common with the defendant and the grantees of Williams, and so he cannot maintain this action.   3. That the grant from Chamberlin to Quimby, and from him to the defendant, is of a sufficient quantity of water to carry a fulling mill and shears, and that the defendant had a right to use the same quantity of water for any other purpose; —that the limitation was of quantity, and not of the purpose, for which the water should be used.   4. That the defendant had acquired the right by fifteen years occupancy.   5. That unless the plaintiff had shown some contract between the parties, or some request by the defendant for permission to use the water, he could not recover in this action.

The evidence did not distinctly show how the defendant claimed to use the water,—whether as matter of right or by permission of the plaintiff; but some parts of the testimony tended to show, that it was by permission of the plaintiff, and that question was submitted to the jury.

The court charged the jury, that if the plaintiff, and those under whom he claimed, had exercised control of the water in the dam, to which the deeds referred, the plaintiff's title was sufficiently proved; —that the plaintiff's title was paramount to the title of the defendant and those under whom he claimed, and they did not hold as tenants in common;—that the defendant's deed would only give him the right to use the requisite quantity of water for a fulling mill and its apparatus, as specified in the deed, and during the season of fulling and cloth dressing, and not at any other season; and that if the business so diminished, as to require less water, than at the time the deed was originally executed, that would not justify the defendant in putting the water, which would have been necessary, if the business had not diminished, to other uses; but that, to the extent of the quantity requisite each year for the purposes named in the deed, and for the same time, the court considered the defendant might, if

he chose, put the water to any use, which he desired, thereby caus-
ing no detriment to the plaintiff; but that the defendant could not,
under his deed, make use of water at a different time in the year
from that when fulling and cloth dressing is carried on, and for an-
other purpose, although he used in the whole year no more water,
than was required for cloth dressing at the time the deed was exe-
cuted, and although he used no more at any one time, than he might
draw from the gate, by which his cloth dressing was operated;—
that it was conceded, that the defendant used water for carding,
which was taken from the plaintiff's pond at a time, when he would
not be required to use any for the cloth dressing business, and that
for some portion of the time he used it for both operations at the
same time; and the plaintiff must recover, unless the action failed
upon one of two grounds;—1. If the defendant had so used the
water, under a claim of right, for fifteen years, he would thereby
acquire a right so to use it;—2. If the defendant used it under a
claim of right, without the permission of the plaintiff, this action
could not be maintained; for to maintain this action for use and
occupation, it was requisite, that the use should be by the plaintiff's
permission, acknowledging his right to the thing used, without any
adverse claim of right in the defendant.

Verdict for plaintiff. Exceptions by defendant.

*C. B. Leslie* for defendant.

The deposition of Patterson should have been rejected,—as it
does not appear, that the deponent made oath to the truth of the
deposition. Rev. St., c. 31, § 7. *Bell* v. *Morrison*, 1 Pet. 355.
*Pingry* v. *Washburn*, 1 Aik. 264. *Whitney* v. *Sears*, 16 Vt. 587.
*Burroughs* v. *Booth*, 1 D. Ch. 106.

The defendant insists, that the plaintiff, the defendant and the
grantees of Williams are tenants in common of the water privileges;
that each grantee is to sustain a certain proportion of the expense
of making and keeping in repair the necessary dams and flumes,
and all draw water from one common pond. They hold by distinct
titles, without unity of interest, but a unity of possession. If a
man enfeoff another of a moiety, not limiting it in severalty, they
are tenants in common. Co. Lit. 190, sec. 299. 3 Bac. Abr. 195.

The general rule is, that a deed shall be construed most strongly

against the grantor. Co. Lit. 196. Ib. 48. 1 Bl. Com. 380. Chit. on Cont. 78. 1 Sw. Dig. 234. 1 Pow. on Cont. 395. Therefore the proper construction of the deed from Chamberlin to Quimby is, that the defendant, in the use of water, is restricted only as to quantity. After a right has been acquired to use water for one purpose, the owner has the right to use the same extent of water for a different purpose, provided he do no prejudice to any other owner. 3 Steph. N. P. 2749. 6 N. H. 22. 2 Ib. 255.

The water has not been wanted for the grist mill, and the plaintiff has not the right he claims; his right was only to the use of sufficient water to carry the grist mill.

*A. Underwood* for plaintiff.

The plaintiff insists, that the construction of the deed from Chamberlin to Quimby, contended for by the defendant, is contrary to the manifest intention of the parties to it. In construing an instrument the whole is to be considered. The conveyance is limited in duration to such period, as Quimby and his assigns carry on a clothier's shop, and was made for the express purpose of having the business of a clothier carried on,—plainly indicating, that the water would revert to Chamberlin and his assigns, whenever the clothing business should cease to be carried on. If the defendant's construction be correct, the conveyance would become perpetual, to whatever use the water might be converted. The fact, that the plaintiff's grist mill and saw mill had been discontinued can make no difference as to his right; he, being the general owner of Chamberlin's water power, subject only to the rights conveyed to Quimby, might use it, or retain it without use. *Mason* v. *Hill*, 5 B. & Ad. 1, [27 E. C. L. 11.] *Palmer* v. *Keblethwaite*, 1 Show. 64, and *Glynne* v. *Nicholas*, 2 Show. 507,—reported also in Comb. 43,—referred to in *Mason* v. *Hill*. The plaintiff and defendant were not tenants in common. Chamberlin and those claiming under him were the general owners, and Quimby's right was special, limited, and subject to be defeated by non-user for the purposes designated in the grant.

The opinion of the court was delivered by

HALL, J. The most important questions in the case relate to the construction of the deed, or lease, from Chamberlin to Quimby in 1797.

It is insisted in behalf of the defendant, that the deed of Chamberlin conveyed to Quimby the right to use, in such manner as he might choose, such quantity of water, as would be sufficient for carrying a fulling mill and shears for a clothier's shop ; while it is claimed on the part of the plaintiff, that the deed restricted the use of the water to the purpose of driving a fulling mill and shears.

To sustain the position of the defendant, that the grantee of Chamberlin and those claiming under him, having acquired the use of the water for one purpose, are entitled to use it to the same extent for other purposes, the case of *Saunders* v. *Newman*, 1 B. & Ald. 238, [3 Steph. N. P. 2749,] is much relied upon. The question in that case, however, did not arise upon the construction of a grant. In England the owner of land upon a stream, by twenty years use of the water, acquires a right to such use, as against the owners of land, on the same stream, above and below him. In *Saunders* v. *Newman* the plaintiff had occupied a mill for forty years, but had recently changed the construction of his water wheel, though not in such manner as required the use of more water, than was before used. The defendant, who had forced the water back upon the plaintiff's new wheel, claimed the right to do so, because the form of its construction had been changed, by which, it was insisted, the plaintiff had lost his ancient right to the use of the water. But the court held differently, and said, in reference to a right thus gained by ancient user, that, where a party has thus acquired a right to use water for one purpose, he may use the same extent of water for a different purpose, provided it does no prejudice to any other owner in his use of the water. But this case had no reference to the construction of a contract in regard to the use of water, or of a grant of the use of it,—which grant must doubtless be construed by the same rules, that govern in other cases,—the intention of the parties being the matter to be looked after in the construction.

On a careful examination of the deed from Chamberlin to Quimby, we feel constrained to hold, that the right to use water for a fulling mill and clothier's works, only, was intended to be conveyed, and that the parties had not in their minds the fulling mill and clothier's shears as a mere measure of the quantity of water, that might be used. In the beginning of the deed the grant is declared to be " for the purpose of having the business of a clothier

Shed *v.* Leslie.

carried on, and in consideration of five shillings." And though the description of the right conveyed, if it stood alone, might perhaps be construed to embrace a quantity of water for general purposes,— the words being, " water sufficient for carrying one fulling mill and shears for one clothier's shop,"—yet the *habendum* of the deed clearly shows, that the right conveyed was not designed to continue any longer, than the grantee, his heirs and assigns, should carry on the clothier's business. When that business should cease, the right to use the water was to terminate. It could not, therefore, have been the intention of the parties, that the water should be used for other purposes, than for clothier's works.

This being our view of the grant from Chamberlin to Quimby, it follows, that we find no error in the charge of the court in regard to the quantity of water, which the defendant might use for his *carding* machine, of which the defendant is entitled to complain.

This construction of the conveyance from Chamberlin to Quimby also disposes of the question, made in regard to a tenancy in common, as well as that in relation to the right to the water retained by Chamberlin, and to which the plaintiff has succeeded. We must decide both these points against the defendant.

It is objected, that there was not sufficient evidence of a contract for the use of the water, between the plaintiff and defendant, to entitle the plaintiff to recover in this action. But there appears from the bill of exceptions to have been *some* evidence, tending to prove that the defendant used the water by permission of the plaintiff; and though it would seem not improbable, that the jury came to a wrong conclusion upon the evidence, and charged the defendant, when their verdict might very well have been the other way, yet that is not a matter that can be reviewed on a bill of exceptions. The verdict of the jury upon the evidence is conclusive.

The only remaining question in the case is in reference to the admission of the deposition of Patterson.

The deposition appears to have been taken and certified in due form, except that the certificate of the oath of the deponent is not signed by the justice. It is insisted in behalf of the plaintiff, that the signature of the justice, which appears to the caption below, is to be considered as attached to both certificates, and that the deposition was therefore properly admitted. But this is not a compli-

ance with the statute. The form provides for two signatures of the magistrate, and on consideration we think it will not do to dispense with either. In this case there is a blank left for the signature of the justice to the certificate of the oath. The omission of the signature leaves the paper imperfect. It does not appear to have been the intention of the justice to embrace this certificate in his signature of the other, and the omission may have been for the very reason, that the oath had not been administered. If the deponent were indicted for perjury, it would, we think, be difficult to maintain, that the deposition was proper evidence, that the oath had been administered. We therefore think the deposition was wrongly admitted.

The judgment of the county court is reversed, and a new trial granted.