# COUNTY OF PENOBSCOT.

ELHANAN GARLAND *versus* MOSES HODSDON *& al.*

Where a right to use water for a specific purpose is granted, without being appurtenant to a grant of land, the presumption is strong that the grant is intended to be limited to the purpose named.

But if the grant is appurtenant to land conveyed by the same deed, unless the contrary intention is clear, the use designated will be taken merely as the *measure* of the water granted, which the grantee may use for that or for other purposes.

Where the right to use water from a dam and stream is granted, with a proviso that the grant shall "in no case extend so far as to take water when the same shall be wanted for the grist-mill," which is or may be erected on or near the dam, this is an *exception*, rather than a reservation, and is to be construed most strictly against the grantor; and the grantor and his representatives have no right to use the water so excepted for any but the specified purpose.

THIS was an ACTION OF THE CASE for diverting water from the plaintiff's mills and pond.

The plaintiff owned and occupied a grist-mill, saw-mills and other machinery, on the east side of Kenduskeag stream, in Kenduskeag village. The defendant owned and occupied a mill on the west side of the same stream, in which he had a carding and other machines, and also saw-mills. Both drew water from the same dam. Both derive their title from the same original grantor. It is admitted that the defendants have all the right and title conveyed in a deed to Simeon Parsons, dated Oct. 27, 1829, which is made a part of the case; and that the plaintiff has all the estate and power not embraced in that deed. The substance of the deed is given in the opinion of the Court. The land on which the dam stands belongs to the plaintiff, the lot conveyed in Parsons' deed lying wholly below the dam.

In times of low water, there was not sufficient water for all the mills, and the plaintiff introduced evidence to show that

there was not more than enough to run two sets of stones in the grist-mill, and claimed the right at such times to use that quantity of water for his saw-mill or other machinery, when not wanted for the grist-mill.

The defendants contended that, when the water was not wanted for the grist-mill, they had a right to use, for sawing or any other purpose, water sufficient for a fulling-mill and four single carding machines, prior to the plaintiff's right to use water for any other purpose than to run his grist-mill.

It was proved that, when the Parsons deed was given, the grantors had a grist-mill and a saw-mill on the privilege; and, that, since that time, the water in the stream has greatly diminished.

The Court, Judge CUTTING, instructed the jury, that the plaintiff had the prior right to use the water in the stream, sufficient to run two runs of stones in the grist-mill, but could not use this quantity of water for any other purpose; that the defendants had a right to use what water was not wanted to run the two runs of stones, next after the right of the plaintiff; and that the defendants might use the quantity of water specified in the deed to Parsons for any other machinery, and the plaintiff had the right to all the remainder of the water. To these instructions, the plaintiff filed exceptions.

*A. W. Paine,* in support of the exceptions, argued that the language of the deed is as strong in favor of the plaintiff as of the defendant, and cited the words used to show that the defendant is limited to as rigid a rule as the plaintiff in the *use* of the water, and has no right to divert his quota of water to any other use than the one specified in the deed.

The grantors to Parsons owned the whole privilege, and had already occupied it for a grist-mill and saw-mill. Is it reasonable to construe their grant to Parsons as intended to authorize him to establish a rival saw or grist-mill? On the other hand, a new mill of a different kind might bring business to their mills. *Dearborn* v. *Porter,* 38 Maine, 289.

The business of fulling cloth and carding was one which re-

quired but a small and not a constant supply of water. This negatives the idea that they intended to grant a certain quantity of water to be used at all times and for any purpose.

By the terms of the deed, the carding machines could be connected only to the fulling-mill. If not so connected, no water can be taken for their use or for any other purpose, except for the fulling-mill. This condition shows the intention of the parties to limit the use. The measure expressed is contingent and uncertain, and therefore no measure at all. *Ashley* v. *Pease*, 18 Pick., 277; *Deshon* v. *Porter*, 38 Maine, 294.

The defendant owned no part of the land under the dam. The deed to Parsons gave him no right to the dam, but only to draw water from it. This shows that his right was to be subservient to that of the grantor, and weighs strongly in favor of the plaintiff's construction. *Tourtillot* v. *Phelps*, 4 Gray, 373.

The words in the deed, "the right and privilege in the dam and stream for the aforesaid purposes," limit the use of the water to the purposes expressed. *Libbey* v. *Hoar*, 4 Gray, 222; *Dewitt* v. *Harvey*, 4 Gray, 486.

2. The reservation in the deed was of a specified quantity of water sufficient for two runs of stones. This reservation was absolute, and the plaintiff had a right to so much water at all events. Otherwise the defendant might draw off the water when the grist-mill was not in operation, and when the plaintiff had occasion to start it again, he would have no water. The defendant is but a conditional grantee, and has no estate until the plaintiff's is at an end. The water reserved by the plaintiff remains his, and although expressed to be for a certain purpose, he had a right to use it for other purposes not injurious to the defendant. *Boab* v. *Empire*, 1 Selden, 33; *Crowell* v. *Selden*, 3 Comstock, 253; *Shed* v. *Leslie*, 22 Vt. (7 Washb.,) 498.

*J. A. Peters* and *Hodsdon*, for the defendants, cited *Ashley* v. *Pease*, 18 Pick., 268; *Farrar* v. *Wyman*, 35 Maine, 64.

The opinion of the Court was drawn up by

DAVIS, J.—Moses Patten, and certain co-tenants, formerly owned a mill privilege, and lands, on both sides of the Kenduskeag stream, situated in Levant, in the county of Penobscot. In 1829, they owned and carried on a grist-mill and also a saw-mill, on the privilege, both mills being on the east side of the stream.

October 27th, 1829, they conveyed to one Simeon Parsons a parcel of land on the west side of the stream, including a part of the dam and mill privilege, with such part of the water power as is embraced in the following clause contained in the deed:—

"Together with the right and privilege in the dam and stream, to take and use water sufficient for one fulling-mill, and the necessary machinery for dressing cloth, and, also, for such carding machines as may be connected with said fulling-mill, not exceeding four single machines, or two double ones.

"Provided, however, that the right and privilege in the dam and stream, for the aforesaid purposes, shall in no case extend so far as to take the water when the same shall be wanted for the grist-mill now erected on or near said dam, or such other grist-mill as may hereafter be erected instead of the present one, on or near said dam; meaning and intending to reserve for the use of said grist-mill, the right at all times to take water sufficient for two runs of stones," &c.

The plaintiff, who claims under the grantors, contends that the reservation in the deed is of a quantity of water equal to what would be necessary for such a grist-mill, and that he may use it for other purposes; and that the grant was for the specific purpose of a fulling-mill and carding machines, and available for no other.

The defendants, who derived their title from Parsons, claim the right to use the water for any purpose; and they contend that the reservation to the grantors was for the use of the grist-mill only, and that it cannot be held for any other purpose. The questions are independent, and must be determined separately.

Did the grant limit the use to the purposes of a fulling-mill? Or was the purpose named, in order to fix the volume of water conveyed by the deed?

When the intention of a grantor is clearly expressed in the deed, either way, courts will always give effect to it. *Tourtillot* v. *Phelps*, 4 Gray, 370. But, if the intention is left doubtful, the tendency of courts is to construe such grants most favorably to the grantee.

If one conveys only an incorporeal hereditament, a right to use the water for a particular purpose, with no grant of land to which it is appurtenant, the presumption is strong that the right in the water is intended to be restricted to the specific purpose named.

But, if the grant of water is appurtenant to a parcel of land, conveyed by the same deed, the beneficial use of the land, under the changes of business which occur from time to time, may require the use of the water for other purposes than those which are specified. And, for this reason, unless the contrary intention is clear, the use designated will be taken by the courts merely as the measure of water granted, which the grantee may use for that, or for other purposes.

Applying these principles to the case at bar, we are satisfied that the defendants may use the water for other machinery, the quantity not exceeding what would be required for a fulling-mill and carding machines.

The plaintiff, however, contends that the reservation should receive the same construction as the grant; that water enough for a grist-mill is at all times reserved for him, which he may use for that purpose, or for any other. And, if such had been the intention of the grantors, clearly expressed, the right so reserved would be sustained by the Court.

But the terms of the reservation are entirely different from those of the grant. It is not a reservation of "water sufficient for" a grist-mill, but a limitation of the grant "*when* the water shall be wanted *for the grist-mill*." The restriction to the particular use could hardly be more clearly expressed.

Besides, what is here called a "reservation" is, strictly

speaking, an "exception." It does not apply when there is water enough for both parties. It is a part of the thing granted, deducting so much from it. A *reservation* is always external to the grant, and may be good or bad, without diminishing it. 7 Petersdorf, 675, 679. An *exception*, if valid, reduces the grant; if void, the entire grant is good, unaffected by it. 4 Comyn, title Fait. If doubtful, or uncertain, it is void; and the grant shall be held free of it. And, whether valid or void, it is in all cases to be construed most strictly against the grantor. 10 Coke, 106, b.

The deed, in this case, contains a grant of water sufficient for a fulling-mill and four single carding machines. The volume of water so granted is subject to be diminished by the exception, when wanted by the grantors for the grist-mill. We do not think the exception so doubtful as to be void. But we are of opinion that the grantors, or those claiming under them, have no right, under the exception, to use the water for any purpose except that which is specified. Beyond this, the entire grant must be upheld, according to its terms.                                    *Exceptions overruled.*

TENNEY, C. J., and CUTTING, MAY, and KENT, J. J., concurred.