CALVIN S. ALBEE *v.* W. S. HUNTLEY.

[In Chancery.]

*Deed, Construction of. Water Privilege. ⸰ Master's Report. Merger of Estates. Forfeiture.*

1. WATER PRIVILEGE. The deed contained this clause, " with the privilege of taking water from my mill dam * * * * sufficient to carry a shingle machine at all times, leaving a sufficient quantity of water for the grist mill, with two or three run of stones, as the case may be;" and then provided that if the grantee should "persist in taking water from the dam to the injury of the grist mill, after due notice," the right should cease, and the grantor reserved the power of removing the gate. Subsequently a second deed was executed, extending the grant so that " the same quantity of water may be used to propel any other machinery instead of a shingle machine except machinery for the grinding of grain, always leaving a sufficient quantity of water for the grist mill," etc. with the same right of stopping the water as stated in the first deed. *Held*, that there was reserved a sufficient quantity of water to run a grist mill with two or three runs of stones; that the deed measured the quantity of water, and not its use; that it could be used for propelling any kind of machinery; and that the second deed did not vary the rights of the parties except restricting the use by the grantee to any purpose save that of a grist mill.

2. The master's report must govern as to the punctuation of the original deed.

3. MERGER OF ESTATES. Before the orator and defendant became the owners, one S. owned both premises. S. conveyed the defendant's premises with all the privileges and appurtenances. The orator's premises passed under a mortgage executed before there was a common owner. The court hold that the intent of the parties was to keep the estates separate, that equity requires it, and that the orator took only the rights of the original grantee.

Albee *v.* Huntley.

4.  The use was not adverse, as the superior rights of the defendant had never been denied

5.  FORFEITURE.  The orator persisted in taking the water from the dam to the injury of the grist mill after due notice.  The defendant shut the head gates, but afterwards opened them.  *Held*, that the orator forfeited his right to take the water, and that the defendant waived the forfeiture.

BILL in chancery praying for an injunction to restrain the defendant from interfering with the orator's use of a water privilege.  Heard on bill, answer, traverse, and the report of a master, December Term, 1883, POWERS, Chancellor.  Bill dismissed.

Subsequently to the execution of the Chipman deed other machinery was put into the orator's mill for sawing boards and coarse lumber.

The defendant's premises were used, in whole or in part, down to the fall of 1880, for grinding grain, when the grist mill machinery was removed, and machinery for finishing lumber, sawing staves, and making butter tubs, was put into his mill.  The master found that at the time the water was shut off, " the defendant was not using as much water as would be required to run two runs of stones," and that the orator's machinery "required considerably more water than      *      *      the shingle machine" did.  The other facts are sufficiently stated in the opinion.

*A. P. Tupper, Thos. H. McLeod,* and *James Slade,* for the orator.

The terms of the grant in the Chipman deed are to be construed to operate most favorably for the grantee.  *Flagg* v. *Eames,* 40 Vt. 16 ; *Smith* v. *Day,* 15 Vt. 660 ; *Mills* v. *Catlin,* 22 Vt. 98.  In view of the master's findings as to the capacity of the stream, and the defendant's claim, the grant was nugatory, and the court should give it such a construction as to render it operative.  Spoor became the owner of both rights, and the easements were merged in him.  After the merger, the successive rights to the water depended on Spoor's deed, and not on Chipman's.  *Miller* v. *Lapham,* 44 Vt. 416 ; *Grant* v. *Chase,*

17 Mass. 443 ; 1 Add. Tor. 168 ; *Crittenden* v. *Field*, 8 Gray, 621 ; 2 Mass. Dig. p. 783. There was no forfeiture ; but if there was, it was waived. *Ripley* v. *Astor Ins. Co.*, 17 How. Pr. 444 ; *Henry* v. *Tupper*, 29 Vt. 358 ; *Dunklee* v. *Adams*, 20 Vt. 421 ; Story Eq. ss. 1314, 1319.

*Stewart & Wilds*, for the defendant.

The exception in the deed is a measure of quantity, not of use. Chipman at all times was entitled to use all the water in the stream when there was no more that sufficient water in the stream for the grist-mill for two or three runs of stones, or a volume no larger than the equivalent of that measure. When the volume of water exceeded that measure, Bacon was entitled to the surplus to the extent of the water " sufficient to carry a shingle machine," and no more. *Rogers* v. *Bancroft*, 20 Vt. 257 ; *Adams* v. *Warner*, 23 Vt. 399 ; REDFIELD, Ch. J., in *Rood* v. *Johnson*, 26 Vt. 72 ; *Miller* v. *Lapham*, 44 Vt. 416. The possession was not adverse ; 2 Wash. R. P. 321.

The opinion of the court was delivered by

TAFT, J. This case is a bill in equity asking that the defendant be enjoined from interfering with the orator's use of water from a mill privilege supplying water for the mills of the respective parties.

In August, 1840, Daniel Chipman conveyed the premises now owned by the orator to one Bacon " with the privilege of taking water from my mill dam * * * sufficient to carry a shingle machine at all times, leaving a sufficient quantity of water for the grist mill, with two or three run of stones, as the case may be ; and if the said Bacon, his heirs or assigns shall persist in taking water from the dam to the injury of the grist mill, after due notice, the right hereby granted of taking water from said dam shall cease, and the said Chipman, his heirs or assigns shall have full right, not only to stop the water, by shutting the gate, but to remove the gate and stop the hole in said dam through which the water may have been taken." In March, 1841, Chipman executed a deed to said Bacon of the same premises, with the privilege of taking water " sufficient to carry a shingle machine, or the same quantity of water may be used to

propel any other machinery instead of a shingle machine, except machinery for the grinding of grain, always leaving a sufficient quantity of water for the grist mill, with two or three run of stones, as the case may be," with the same right reserved of stopping the water as stated in the former deed. The orator claims under the rights conveyed to Bacon, and the defendant, by successive grants, holds the estate retained by Chipman after the Bacon conveyance. The first question to be determined by the court is as to the construction of the deeds above referred to. We think it clear, that, even under the first deed, there was reserved to Chipman a sufficient quantity of water to run a grist mill with two or three run of stones; that the deed measured the *quantity* of water, not its *use*; that the water could be used for propelling any kind of machinery that the owner might think proper to apply it to. The original deed is not shown in evidence, and the parties are at variance as to whether in the clause of the deed, " sufficient to carry a shingle machine at all times leaving a sufficient quantity of water for the grist mill, etc.," the comma should be inserted after the word *machine* or *times.* The report of the master must govern us; and we treat it as after the latter word. Adopting this. construction, the orator contends that the fact that the report finds " that there was not more than sufficient water in the stream to run three run of stones" rendered the rights of Bacon under the deed nugatory.

To the above quotation of the finding there should be added, " except in spring and fall, and for a limited period at other times of the year, when the water was high from heavy rains and thaws."

It is more likely that the use of the water should have been restricted to the spring and fall and the times of high water in the case of a shingle machine than in that of the grist mill, as there was a greater necessity of the constant use of the latter. It is claimed that the terms of the grant are to be construed most favorably for the grantee; and such is the rule in some cases ; but, as has been said, it is the last which courts apply, and never resorted to, so long as a satisfactory result can be

reached by other rules of analysis and construction. *Flagg* v. *Eames*, 40 Vt. 16. The rule is not applicable to any case but one of strict equivocation, where the words used will bear either one of two or more interpretations equally well. An owner in parceling out a water power would, as a general thing, be more likely to restrict others than himself, having the power to do so. *Adams* v. *Warner*, 23 Vt. 395. But nothing can be plainer than the words used. "Leaving a sufficient quantity of water for the grist mill" were the terms of the grant, and then follows a forfeiture in case water should be taken to its injury. We have, therefore, no doubt but that. Chipman, after his conveyances to Bacon, had the right to the use of sufficient water to run the grist mill, and for any purpose he desired to use it for; and that, until the second conveyance, Bacon had the right to enough to carry a shingle machine, and after that for any purpose (save running a grist mill) that he might wish to apply it to. The deed of 1841 does not vary the rights of the parties under the first deed, except restricting the use of the water by the grantee to any purpose save that of a grist mill.

On the 31st day of January, 1866, the premises of both orator and defendant were owned by one Spoor, and remained so until October, 1868. The question was discussed at the hearing whether the two estates became merged, so that by the re-conveyance of the estates separately the easements existing under the Chipman deeds were not revived; but the rights of the parties depended upon the estates created by the re-conveyance from Spoor. When Spoor conveyed the defendant's premises to Tisdale in October, 1868, the deed contained no direct reference in terms to the water privileges, but granted the premises with all the privileges and appurtenances thereof. We think the intention of the parties was, that the appurtenances were the same as described in the Chipman deeds; for the orator's premises were conveyed the following year by deed referring to the previous grants as described in a deed from Daniel Chipman, etc.; and, as further sustaining this view, and, as we think, decisive of the question, the orator's premises passed under a mortgage executed

prior to the time that the title to the land became vested in a common owner. We think the intent of the parties was to keep the estates separate, and that equity requires it to be done.

The orator has acquired no title to the use of the water by adverse possession. The master reports that the superior rights of the grist mill to the use of the water have never been denied by the several owners of the complainant's premises, and have been recognized since 1872.

The right of the complainant to take water from the pond was forfeited, the report of the master showing that the orator persisted "in taking water from the dam to the injury of the grist mill after due notice." A decree might be made in respect to the future use of the water; but the defendant waived the forfeiture, and, as HALL, J., says in *Dunklee* v. *Adams, Adm'r,* 20 Vt. 415, "no court ever relieved against a second forfeiture, for the breach of a covenant to perform a collateral act," we feel assured that the duties of the complainant in respect to the use of the water will in future be faithfully performed, and deem it best to order that the bill be dismissed.

Decree of the Court of Chancery is affirmed, and cause remanded with the above order.