FRANK A. HALL, Respondent, *v.* THE STERLING IRON AND RAILWAY COMPANY, Appellant.

1. WATER RIGHT — APPURTENANCE. A grant of a water right in a natural stream, from a superior riparian owner to an inferior owner, passes under the term "appurtenances" in a deed of the inferior riparian land.

2. GRANT OF WATER POWER — LIMITATION — CONSTRUCTION. The question whether a grant of water power sufficient to operate a designated establishment is to be construed as indicating the quantity of water to be used or as limiting the use to a specific purpose is one of intent, to be determined from the language of the grant; and if the meaning is doubtful, that construction is to be given which shall best subserve the interests of the public by permitting the use of the water for any legitimate purpose which the owner may desire.

3. GRANT OF WATER POWER — LIMITATION — CONSTRUCTION. A grant conveyed the right of using or drawing off the water from a certain pond, "near a nail manufactory called the M. Works, for the purpose of carry-

ing on the said works, in such quantity as would be sufficient for carry-
ing on and working the furnace situated between said nail factory and the
said pond, called S. Furnace, and for which purpose said water is now
used, and no further or greater quantity; provided, always, that the right
so as aforesaid granted of drawing off said water as aforesaid shall cease
at all times whenever said furnace called the S. Furnace is in blast or mak-
ing iron." *Held*, that the grant was limited only as to the quantity of
water to be used and not as to the purpose of the use.

Reported below, 74 Hun, 10.

(Argued January 28, 1896; decided February 18, 1896.)

APPEAL from judgment of the General Term of the
Supreme Court in the second judicial department, entered
upon an order made December 26, 1893, affirming a judgment
in favor of plaintiff entered upon a decision of the court on
trial at Special Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*William B. Anderson* for appellant.    The language of the
grant, properly construed, especially in view of the circum-
stances at the time it was made, limited the use of the water
to the Monroe Nail Works, and lapsed with the abandonment
of those works. (*Ashley* v. *Pease*, 18 Pick. 268; *Strong* v.
*Benedict*, 5 Conn. 210; *Shed* v. *Leslie*, 22 Vt. 498; *Deshon*
v. *Porter*, 38 Maine, 289; *Cromwell* v. *Selden*, 3 N. Y. 253;
*Borst* v. *Empie*, 5 N. Y. 33; *Sibley* v. *Hoar*, 4 Gray, 222;
*Hartwell* v. *M. L. Ins. Co.*, 50 Hun, 498; *Tourtellot* v.
*Phelps*, 4 Gray, 370; *Garland* v. *Hodsdon*, 46 Maine, 511;
*Wakely* v. *Davidson*, 26 N. Y. 387; *Pratt* v. *Lamson*, 2
Allen, 275; *Albee* v. *Huntley*, 56 Vt. 454; *Fisk* v. *Wilber*,
7 Barb. 395; *Carleton Mills Co.* v. *Silver*, 82 Maine, 215;
*Groat* v. *Moak*, 94 N. Y. 115; *Terry* v. *Smith*, 47 Hun, 334;
*Mudge* v. *Salisbury*, 110. N. Y. 413; *Olmsted* v. *Loomis*, 6
Barb. 152; *Biglow* v. *Battle*, 15 Mass. 313; *Adams* v.
*Warner*, 23 Vt. 395; *Hines* v. *Robinson*, 57 Maine, 324;
*Covel* v. *Hart*, 56 Maine, 518; *Rogers* v. *Bancroft*, 20
Vt. 250.)    The defendant has, by adverse possession and

the acquiescence of the plaintiff and his grantors, re-acquired the right. (*Terry* v. *Smith*, 47 Hun, 333; *Mitchell* v. *Walker*, 2 Aik. 266; Gould on Waters [2d ed.], § 339.) The testimony shows that the defendant in no way obstructed the water from Mt. Bashan at any of the times mentioned in the complaint, except to maintain the control of the water at Mt. Bashan, which it always had maintained, and except for the purpose of refilling the little dam, which was a lawful obstruction; therefore, no injury was done the plaintiff. (*De Baun* v. *Bean*, 29 Hun, 236; *Palmer* v. *Mulligan*, 3 Caine's Cas. 307; *Platt* v. *Johnson*, 15 Johns. 213; *Gould* v. *B. D. Co.*, 13 Gray, 442; *Clinton* v. *Myers*, 46 N. Y. 511; *Wood* v. *Edes*, 2 Allen, 578.) The proof discloses that if the plaintiff owns any right whatsoever it is but an undivided one-half of the right alleged in the complaint. On the facts proved he is not entitled to judgment in his favor. He must prove his title, as alleged, and he has failed to do so. Wherefore, a new trial should be ordered. (*Jackson* v. *Harrington*, 9 Cow. 86; *Henry* v. *Reichert*, 22 Hun, 394; 2 Greenl. on Ev. § 331; 1 Greenl. on Ev. § 71.)

*E. A. Brewster* for respondent. The plaintiff was not restricted to the use of the water to run a nail factory, but was entitled to use the same quantity of water for any other purpose, and upon any part of his premises. (*Cromwell* v. *Selden*, 3 N. Y. 253; *Olmsted* v. *Loomis*, 9 N. Y. 423; *Wakely* v. *Davidson*, 26 N. Y. 387; *Comstock* v. *Johnson*, 46 N. Y. 615, 620; *Grout* v. *Moak*, 94 N. Y. 115, 126; *Mudge* v. *Salisbury*, 110 N. Y. 413.) The right to use the water of the stream in question is clearly a right appurtenant to the plaintiff's property, having all along been used in connection therewith. Being appurtenant, such right passes with the title of the property without being expressly specified in the deed. (*Huttemeier* v. *Albro*, 18 N. Y. 48; *Simmons* v. *Cloonan*, 81 N. Y. 557; Code of Civ. Pro. 498, 499.) For more than fifty years the water right in question has been exercised by the plaintiff and his predecessors in connection

with machinery on the very spot where plaintiff's factory
stands, and for some use other than a nail factory. From
1870 to 1891, a period of twenty-one years, the plaintiff and
his predecessors exercised this right, and the defendant
acquiesced. This amounted to a practical construction of the
grant and gave plaintiff a prescriptive right. (*Mudge* v.
*Salisbury*, 110 N. Y. 413.)

HAIGHT, J. This action was brought to restrain the defend-
ant from placing obstructions in the outlet of Mt. Bashan
pond in Orange county, or the stream of water leading there-
from, and from doing any act which shall diminish or inter-
fere with the free flow of the water from the pond through
its outlet.

Mt. Bashan pond is a lake about a square mile in extent,
fed by springs and surface water. At the northeastern end
of the lake is the outlet, from which runs a stream in a south-
erly direction. In the outlet of the lake there is a dam with
gates by which the flow of the water can be accelerated or
retarded to suit the requirements of those entitled to the use
of the water. About three miles below there is another pond
of about fifty acres in extent known as the Little Dam pond.
From this pond there is a flume through which water was
conveyed to the Southfield furnace, now known as the Ster-
ling furnace, and from thence by a tail race to the original
channel of the stream. A short distance below the furnace
and on the opposite side of the outlet there was located a
nail factory and a grist mill operated under one management
and known as the Monroe Works, which works were operated
by the water flowing through the outlet. In 1811 one Peter
Townsend was the owner of the Southfield furnace together
with the lands upon which it was located, including Mt.
Bashan and Little Dam ponds, and one Henry McFarlan was
the owner of the Monroe Works together with the lands upon
which they were located. On the 25th day of June of
that year Peter Townsend and wife, in consideration of the
sum of five dollars to them in hand paid, conveyed to Henry

McFarlan " all the right or privilege of using or drawing off
the water from a certain pond called Mt. Bashan pond, situ-
ate in the town of Monroe, in the county of Orange, near a
nail manufactory of the said Henry McFarlan and others,
called the Monroe Works, for the purpose of carrying on the
said works, in such quantity as would be sufficient for carry-
ing on and working the furnace situate between said nail
manufactory and the said pond, called ' Southfield Furnace,'
occupied and owned by the said Peter Townsend and others,
and for which purpose said water is now used and no further
or greater quantity. Provided always, that the right so as
aforesaid granted to the said Henry McFarlan, his heirs and
assigns, of drawing off said water as aforesaid shall cease at
all times whenever said furnace, called the Southfield Furnace,
is in blast or making iron."

The trial court has found as facts that the plaintiff is now
seized in fee and possessed of the lands upon which the
Monroe Works, so called, were located; that he derived his
title through sundry mesne conveyances from Henry
McFarlan after the conveyance to him by Peter Townsend,
and that the water power granted by the Townsend deed has
by such conveyance, and as an appurtenance to the land,
become, and is now, vested in the plaintiff; that the outlet
of Mt. Bashan pond is a natural stream of water passing
through the plaintiff's lands, which furnishes the water power
for the propelling of the machinery of his factory. The
court further found that, in September, 1891, the defendant,
by closing the gate in the dam upon the stream above the
plaintiff's property, and by forbidding and preventing the
plaintiff from opening the outlet of the lake, deprived the
plaintiff of the water power to such an extent that, some por-
tions of the year, he could run his machinery only about a
quarter of the time; and, as a conclusion of law, the plaintiff
was entitled to an injunction.

It further appears that the nail factory was destroyed by
fire in the vicinity of fifty years ago, and that the factory has
never been rebuilt; that the grist mill was converted into a

basket factory which afterwards gave place to a shoddy mill, and thence to a manufactory of wooden articles, which business is still conducting therein.

The first question presented for our consideration pertains to the plaintiff's ownership of the water right conveyed by Townsend to McFarlan. It appears that McFarlan and one Joseph Blackwell were co-partners engaged in conducting the Monroe Works, and that the same was purchased with the money of the firm. The title, however, was taken in the name of McFarlan, and so remained at the time of his death. It further appears that his executors, pursuant to a power contained in the will, conveyed an undivided one-half of the premises to one Hudson McFarlan, and the other undivided one-half, including the water grant in question, to the seven children and heirs at law of Joseph Blackwell whose death had preceded that of McFarlan's, and that subsequently the seven Blackwell heirs conveyed to Hudson McFarlan, through whom the plaintiff acquired his title. The only question pertains to the conveyance by the executors of the undivided one-half to Hudson McFarlan. The deed describes the lands upon which the works were situated, and grants them " together with all and singular the devices, buildings, rights, members, privileges, advantages, hereditaments and *appurtenances* to the same belonging or in any wise appertaining." The water right is not specifically mentioned or otherwise referred to. We think, however, that it is an appurtenance to the land and passes with it. As we have seen, the water flows through the natural outlet of Mt. Bashan pond. This water course passes through the plaintiff's premises. It is used in connection with the land, and cannot well be severed therefrom. It consequently is attached as an incident to it.

In *Simmons* v. *O'loonan* (81 N. Y. 557) it was held that a water right was an appurtenance to real estate, and that by a conveyance of the land the purchaser takes the same with all the incidents and appurtenances thereunto belonging. In *Mudge* v. *Salisbury* (110 N. Y. 415) GRAY, J., speaking with reference to a water privilege to run a grist mill, says that " it

was made appurtenant to the land conveyed and attached as .
an incident to it." And in *Huttemeier* v. *Albro* (18 N..
Y. 48, 51) STRONG, J., says: "It is a general rule that, upon a
conveyance of land, whatever is in use for it, as an incident or
appurtenance, passes with it."

It is now claimed on behalf of the appellant that the lan-
guage of the grant by Townsend to McFarlan, properly con-
strued, especially in view of the circumstances at the time that
it was made, limited the use of the water to the Monroe Nail
Works, and lapsed with the abandonment of those works.
Whilst on behalf of the respondent, it is contended that the only
limitation in the grant intended pertained to the quantity of
water used and not to the character of its use. The question
thus presented has already received the attention of our courts.
In *Cromwell* v. *Selden* (3 N. Y. 253) it was held that under
a reservation in a grant of land and water privileges of
sufficient water to propel a grist mill the grantor is entitled to
the use of the water for any purpose not requiring a greater
amount than that reserved. HARRIS, J., in delivering the
opinion of the court, says: "It is a general rule of construction,.
applicable to grants of water powers, that when the question
arises whether, by a grant of a sufficient quantity of water to
propel a particular kind of machinery, the terms employed are
used merely to indicate the quantity of water intended to be
granted, or to restrict the use of the water to the machin-
ery specified, the former construction is to be favored,
when the language of the grant will admit of such
construction. The grounds upon which this rule rests
are twofold: First, it is more beneficial to the grantee,
without being more onerous to the grantor, that he
should be permitted to apply the water granted to any
machinery he pleases, not requiring a greater amount of
power than that specified in the grant. · Secondly, it is sup-
ported by public policy. The interests of the community will
generally be best promoted by allowing an unrestricted appli-
cation of the power to such machinery as will be most profit-
able to the owner." In *Olmsted* v. *Loomis* (9 N. Y. 423)

there was a reservation in a grant of a water privilege of
so much water as was necessary for the use of a forge and
two blacksmith bellows.   It was held that the grant did
not limit the use of the water reserved, and that the refer-
ence to the objects had regard to the quantity only.   In
*Wakely* v. *Davidson* (26 N. Y. 387) there was a grant of
land, with the privilege of water to turn a fulling mill,
when the same was not wanted for carding wool.   It was
held that the grant was not a limitation as to the purpose to
which the water was to be applied, but was of the quantity
to be taken.   WRIGHT, J., speaking of the rule applicable
in such cases, says : " When the construction is doubtful,
that is to be preferred which would give to the grantee in the
one case, and to the grantor in the other, a right to
an unrestricted, rather than to a limited, use of the quantity
of water granted or excepted."  In *Comstock* v. *Johnson*
(46 N. Y. 615) there was a grant of a privilege of
drawing water from a dam in sufficient quantity for the use
of a carding machine and clothing works.   It was held
that the words used in the grant were to be taken as a
measure of quantity and did not limit the use of the water to
the particular machinery specified.   And to the same effect
is the case of *Groat* v. *Moak* (94 N. Y. 115) and *Mudge*
v. *Salisbury* (110 N. Y. 413), to which allusion has already
been made.   We have thus particularly called attention to
the cases in our own court, for we think that the rule
therein recognized is founded upon both justice and public
policy.   It is said that there are numerous cases in the
Eastern states in which a different conclusion has been reached
by the courts, but in our own examination of those cases we
have failed to discover any wide difference in views.   True,
the courts in those states have recognized the right of
a grantee to limit the use that is to be made of a
water right as well as the quantity of water to be used,
but this right is also recognized by our own courts.   It is
a question of intention to be determined from the language
of the grant and under the rulings of our courts if the mean-

ing is doubtful that construction shall be given which shall
best subserve the interests of the public by permitting the use
of the water for any legitimate purpose which the owner may
desire.   There may be a slight conflict with reference to this
view in two or three of the cases disposed of by the courts in
our sister states, but in most of the cases we think their views
are in harmony with our own.   We only call special attention
to that of *Ashley* v. *Pease* (18 Pickering, 268), in which it
was held that where a grant is made of a water power, if it is
left in doubt, whether it is a grant of a sufficient quantity of
water to carry a particular kind of mill, making reference to
such mill, to indicate and measure the quantity of water power
intended to be conveyed, or whether it is a grant of the use
of the water to carry such particular kind of mill only, the
former construction is to be more favored, because, in general,
it is most beneficial to the grantee without being more oner-
ous to the grantor, and because such construction is most
favorable to the general interests of the community.   (See,
also, *Strong* v. *Benedict,* 5 Conn. 210 ; *Shed* v. *Leslie,* 22 Vt.
498 ; *Deshon* v. *Porter,* 38 Me. 289 ; *Sibley* v. *Hoar,* 4 Gray,
222 ; *Carleton Mills Co.* v. *Silver,* 82 Me. 215 ; *Albee* v.
*Huntley,* 56 Vt. 454 ; *Garland* v. *Hodsdon,* 46 Me. 511.)

Treating the question as one of intent, to be determined
from the grant under the rule recognized by the authorities,
it becomes necessary to consider the terms used.   It grants
the right of using or drawing off the water of Mt. Bashan
pond for the purpose of carrying on the Monroe Works in
such quantity as would be sufficient for carrying on and work-
ing the Southfield furnace, and no further or greater quantity.
It will thus be seen that whilst the purpose is named the
limitation is made to apply only to the quantity used.   This
is emphasized by the following provision, to the effect that
" the right so as aforesaid granted of drawing off said water
as aforesaid shall cease at all times whenever the said furnace
called the Southfield furnace is in blast or making iron."

Here again we have no limitation as to the character of the
use, but a positive prohibition to the use of any of the water

during the operation of the blast furnace. This, it appears to us, is the clear reading of the grant.

We do not feel called upon to interfere with the judgment, because it does not limit the use to eighty cubic feet of water per minute. The injunction authorized by the judgment follows the language of the grant.

None of the other questions presented require special attention.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.