HARTFORD WOOLEN CO. v. CHARLES L. BUGBEE, ET AL.

October Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and HASELTON, JJ.

Opinion filed November 25, 1903.

*Water Right—Grant—Construction.*

In the grant or reservation of a water right, a reference to an existing use will be considered as a measure of quantity merely, unless the contrary intention appears from the language used or the surrounding circumstances.

A grant of "sufficient water to carry" certain machines named is of the right to draw a certain quantity of water, without regard to the use or place.

When a water right is "not to be used for any purpose to the injury of any machinery now in use" by a certain owner, it is subject to the water right then used to operate the machinery referred to.

APPEAL IN CHANCERY. Heard on pleadings and master's report at the December Term, 1902, Windsor County, *Stafford,* Chancellor. Decree for the orator. Defendant Bugbee appealed.

*George W. Wing* for the defendant.

*Pingree & Pingree* and *William E. Johnson* for the orator.

HASELTON, J.   There is, and for more than 90 years has been, a dam across White River in Hartford village; and the parties hereto are the owners of the power stored thereby. Generally there is sufficient power for the uses of all, but in dry times there is not enough.   This case is here on appeal from a decretal order fixing the relative rights of the parties in the water power.   There are questions in the case which remain to be determined by the Court of Chancery after the cause is remanded.   There is no dispute as to one-half of the power.   That half is utilized on the south side of the stream, and is owned in equal shares by the orator and the defendant Pease.   Prior to the conveyance hereinafter mentioned, one James Fuller owned the other half of the power and with it operated a saw mill, a grist mill, and an oil mill, which was afterwards a plaster mill, situated on the north side of the river. ·

In 1846, Fuller conveyed to Sylvester Morris the oil mill, with certain water rights, and in 1847 he conveyed to said Morris the grist mill, together with a water right defined as follows: "Sufficient water to carry the grist mill when in proper repair, as it now is, to wit, to carry four run of stones, corn cracker, smut mill and two bolts."   Thereafter, one Moses French acquired an interest in said water rights, and in March, 1849, he and said Sylvester Morris conveyed to George P. Bugbee, by their separate deeds, real estate on the north bank of the stream and a 100 inch water right thus defined:   "A privilege to draw water when it is not wanted to carry the grist mill, and the right to draw 10 inches of water.

*    *    *   It is meant that said Bugbee has a right to draw water at a 10 inch gate."   The water right so conveyed to

George P. Bugbee is now owned by the defendant, Charles L. Bugbee, and is called Bugbee's First Right.

After the conveyance to Bugbee, above referred to, but in the same year, S. & E. Morris, who were owners of the grist mill right, and the said James Fuller from whom it had been derived, submitted to arbitration the extent of that right. The arbitrators made an award May 26, 1849, which determined as follows: "That sd. S. & E. Morris shall have the right to draw two hundred square inches of water over and above what they now draw, which is 1868 square inches on his grist mill, for water saved by a different arrangement of his mill,—not to be used for any purpose to the injury of any machinery now in use by sd. Fuller on sd. dam." August 4, 1852, Sylvester Morris conveyed to George P. Bugbee 50 inches of water, in addition to that conveyed in March, 1849, and this grant is now owned by the defendant, Charles L. Bugbee, and is called Bugbee's Second Right. The conveyance defines this right as follows: "The privilege of drawing fifty inches of water in addition to the amount of water heretofore deeded said Bugbee by Moses French on the 22nd day of March, 1849; said water is to be taken from the flume as said Bugbee now draws it, under the plaster mill in lieu of the place mentioned in said French's deed. It is understood that the said Bugbee is not to have the privilege of drawing said water when it is wanted for the grist or plaster mill."

From the recitals in the conveyances referred to it would appear that Bugbee's right to draw the 50 inches of water was made subject to a plaster mill right to which his right to draw the 100 inches was not servient. However, no such claim is made against Bugbee and in view of the pleadings and all the facts reported by the master, Bugbee's First Right and his Second, are treated as standing alike in their relation to other rights in question.

The grist mill itself was destroyed by fire in 1886 and has never been rebuilt. Later in the same year the orator acquired title to the grist mill site, mill privilege, and water power. Since then the grist mill site has been left unoccupied. The orator uses the grist mill right on the south side of the river in connection with its rights hereinbefore referred to.

With respect to Bugbee's right to draw 150 inches of water, the question is whether it is subordinate to a right on the part of the orator to draw, on the south side of the river, a quantity of water sufficient for the purposes of the grist mill as used when George P. Bugbee acquired his First and Second Rights. We think that the grist mill right in question was a right to draw a certain quantity of water, and not simply a right to draw a quantity of water for a particular use or at a particular place. In a grant or reservation of a water right reference to an existing use will be considered as a measure of quantity merely, unless a contrary intention is apparent from the language used or from the surrounding circumstances. *Adams* v. *Warner,* 23 Vt. 395; *Rood* v. *Johnson,* 26 Vt. 64; *Miller* v. *Lapham,* 44 Vt. 416; *Albee* v. *Huntly,* 56 Vt. 454. In *Shedd* v. *Leslie,* 22 Vt. 498, and *Clement* v. *Gould,* 61 Vt. 573, the contrary intention referred to was apparent and governed, and these cases show the limitation of the rule. In the Shedd case a right was granted to use water so long as the grantee should carry on the business of a clothier at or near a designated place. The grant recited that the conveyance was for the purpose of having the business of a clothier carried on. In *Clement* v. *Gould,* the conveyance of water rights was for certain enumerated purposes "and for these purposes only."

The rule of construction which governs our cases is that which, speaking generally, prevails in this country. In a

recent New Hampshire case, *Fowler* v. *Kent*, 52 Atl. 554, 71 N. H. 388, construction was put upon the conveyance of a water right attached to a grist mill.  The language of the conveyance was as follows: "The privilege of drawing the water in the same manner it has been accustomed to run, meaning the first right to draw water for the use of the mill as it now is."  The Court says: "This language was used to describe the quantity of water that went with the privilege, rather than to limit the manner in which, the purpose for which, or the place at which the water was to be used."

The passage above quoted from the opinion aptly illustrates the application to this case of the true rule of construction.  It is reason enough for the rule that reference to a use is a natural and convenient method of designating the extent of a water right.  The method does not call for scientific calculations and computations, yet the result is exact because capable of being made so.  Other cogent reasons for the rule are stated in the cases referred to.

In 1894 the orator conveyed to the defendant, Bugbee, the grist mill site and water power, reserving the right to draw the 1868 inches of water named in the award as the measure of the original grist mill right.  The said Bugbee accepted the conveyance; and the extent in inches of the original grist mill water right is not questioned.  By this last conveyance the defendant, Bugbee, acquired the 200 inches of water named in the before mentioned award.  This 200 inches is called Bugbee's Third Right.  Meanwhile the water right of the said James Fuller, not disposed of as hereinbefore mentioned, had passed to the defendant Gates.

By the terms of the award defining Bugbee's Third Right the quantity of water to which it relates was not to be used for any purpose to the injury of any machinery then in use by said Fuller on said dam.  The language used seems in an

inartificial way to impose such a limitation as to make the 200 inch right subject to the water privilege used at the date of the award in operating the machinery referred to. At any rate, the bill alleges and the answer of the defendant, Bugbee, admits that the right of Bugbee to draw the 200 inches of water is subject to the right of Gates. Bugbee's Third Right is treated as the pleadings treat it, and that right is held to be subject to the right of Gates to the use of the water "needed to operate the machinery, or the equivalent of the machinery, used by Fuller at the date of the award."

· These holdings sustain the action of the Court of Chancery and make it unnecessary to decide other questions discussed in argument.

*The decretal order of the Court of Chancery is affirmed, and the cause is remanded to be further proceeded with.*