Appleton Paper & Pulp Co. vs. Kimberly & Clark Co. and another.

APPLETON PAPER & PULP COMPANY, Appellant, vs. KIMBERLY & CLARK COMPANY and another, Respondents.
SAME, Respondent, vs. SAME, Appellants.

*May 25 — June 23, 1898.*

*Mills and mill-dams: Conveyance of portion of water power: Construction: " Capacity of bulkhead now there."*

A deed of a portion of a water power, describing the volume of water conveyed as " water to the full extent and capacity of the bulkhead now there," referring to an old flume or bulkhead 13.07 feet wide, 6.89 feet deep measuring from the crest of the dam, 12 feet

in length with the stream, and obstructed by a rack to keep débris out of the flume, made of one-inch by five-inch oak boards set edgeways in the water about one inch apart, with the upstream edges sharpened, and worn by ten years' use, the flume not having been in use for some time before the grant, is construed as follows:

(1) That the particular bulkhead referred to, with all the conditions existing at the date of the grant, in any way influencing the flow of water through the same, were designated by the language of the grant as instruments of measurement by which to determine the amount of water conveyed thereby.

(2) That the term "full extent and capacity," as used in the grant, permitted the grantee to take water only in a proper way, and that a proper way requires such taking to be in such manner as not to draw down the head of water so as to materially diminish the amount of power obtainable from a given volume thereof.

(3) That plaintiff is entitled, under such grant, to have the amount of water, in cubic feet per minute, that will flow through a flume such as the one mentioned in the grant, under all the conditions existing at the date thereof in any way influencing such flow, the velocity of the water to be limited, however, to such as will not so materially draw down the head as to use the water in a wasteful way, and when such amount is so determined, plaintiff is entitled to use such amount for the creation of power in any way it sees fit.

[Syllabus by MARSHALL, J.]

APPEALS from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of the defendants.*

Action to determine the proportionate amount of water power created by the Fox river as improved by the government dam across the same, known as the Grand Chute dam, belonging to the several parties to this action. The question involved on this appeal relates to the amount of such power owned by plaintiff under a title referable to a deed dated September 20, 1862, conveying a part of the power, by the person then owning a considerable portion thereof, in the following language: ". . . Privilege of drawing water from the river to the full extent and capacity of the bulkhead now there." The court found that plaintiff, subject to some other interests, owned so much of the water

power as was described in such deed, and that the bulkhead maintained at the date of the deed was 13.07 feet wide, 6.89 feet deep, and 12 feet in length with the stream, the bottom 2.76 inches above the plane of the bed rock over which the spent water passed, and the depth being measured from the crest of the dam, which was one foot lower than the dam as it now exists. The court further found that, prior to September 20, 1862, the bulkhead had been used in connection with a sawmill not then in existence, the same having been destroyed by fire; that there was a rack that had existed some ten years, through which the water necessarily passed, made of one-inch by five-inch oak boards set one inch apart edgeways in the water, and sharpened on the edges pointing up stream; that such a rack existed in the bulkhead up to 1873, when plaintiff substituted one made of three-eighths inch iron rods set about two inches apart, which was used up to the time of the trial with knowledge of, and without objection by, defendants, till the commencement of the action; that the economical use of water does not justify taking it through the bulkhead at a greater velocity than 120 feet per minute, the result of taking it at a greater velocity being to so draw down the head as to diminish the power created by a given volume, but that more power from water could be obtained at the expense of volume, by having it pass through the bulkhead at a velocity up to a point stated in the findings of fact as one where the velocity curve crosses the power curve, which point is not determined, and said not to be determinable even approximately, except by experiments which would be attended with an expense of from $300 to $3,000.

From such findings the court construed the deed mentioned as the one to which plaintiff's rights are referable, as conveying the right to so much water as can, beneficially to it, be taken from a bulkhead opening of the width and under the head, with the length, and obstructed by a rack substan-

Appleton Paper & Pulp Co. vs. Kimberly & Clark Co. and another.

tially the same as when such deed was made, to wit, 13.07 feet wide, 6.89 feet deep from the crest of the dam, 12 feet long measuring with the stream, obstructed by a rack made of one-inch by five-inch oak boards set edgeways with the stream one inch apart, and sharpened at the upper edges, worn as such rack would be after ten years' use, subject further to some limitations of the use for certain machinery, such limitations, however, not being involved in the controversy on this appeal. Judgment was entered accordingly, and in other respects as directed by the findings, no objection being raised except as presented by exceptions on the part of plaintiff to the finding that the dam is now one foot higher than September 20, 1862, and that the floor of the bulkhead, therefore, should be 6.89 feet from the crest of the dam instead of 7.89 feet from such crest, as at the commencement of this action; and to the finding that the capacity of the bulkhead must be determined, having regard to the existence of a rack therein as described in the findings; and exceptions on the part of the defendants to the finding that plaintiff is entitled to take water through the bulkhead at such velocity as will give it the greatest amount of power, regardless of drawing down the head and the economical use of the water. Both sides appealed.

*Lyman E. Barnes*, for the plaintiff, as to the proper construction of the term "full extent and capacity of the bulkhead now there," as used in the grant, and to the point that the plaintiff is not limited by the grant to any velocity, in the drawing of water, short of that which furnishes the maximum power, cited *Valley P. & P. Co. v. West,* 58 Wis. 599; *Blanchard v. Doering,* 21 id. 477; *S. C.* 23 id. 200; *Mack v. Bensley,* 63 id. 80; *Jackson Milling Co. v. Chandos,* 82 id. 437; *Bissell v. Grant,* 35 Conn. 288; *Avon Mfg. Co. v. Andrews,* 30 id. 476.

For the defendants there were briefs by *Hooper & Hooper*, and oral argument by *Moses Hooper*.

MARSHALL, J.   The finding of fact as to the raising of the
dam, challenged by plaintiff, is sustained by substantially
all the direct, as well as the circumstantial, evidence in the
case bearing on the subject.   O'Keefe, who helped make
alterations in the flume in 1863, and was very familiar with
the situation then and for years afterwards, testified that
the new dam was about one foot higher than the old one,
and appears to have reasoned from his knowledge of the
depth of the water in the bulkhead in 1863 and the depth
at the time of the trial.   The engineer in charge of con-
structing the new dam testified that the old one had settled
from ten to fifteen inches in places, and that the new struct-
ure, as he remembered it, was placed at the average height
of the old one.   Several witnesses testified that the water
above the dam was higher after the building of the new
structure than before, some placing the difference as much
as two or three feet.   That array of evidence, in connection
with the circumstance that the old dam was made of spars
and was an old structure as early as 1862, there being no
substantial evidence to outweigh it, seems to make a strong
case in favor of the court's finding.   Certainly, we cannot
say there is a clear preponderance of evidence against it.

It follows, therefore, that the findings of fact made by
the trial court must all stand as verities in the case, and
that both appeals come down to and turn on the meaning
of the descriptive words contained in the grants under which
plaintiff claims, the principal and really only one that need
be construed being that of September 20, 1862.   To that,
plaintiff's rights are referable.   A later deed was made
under which plaintiff claims, but clearly, as held by the trial
court, it does not affect the main question we are called
upon to decide.   It is needless to refer to the familiar rules
of construction in discussing this case, till we proceed far
enough to discover some uncertainty of meaning in the lan-
guage to be considered, calling for such reference.   There

is no need to construe that which is plain, is a maxim of the first importance in dealing with contracts judicially. The purpose of interpretation is to give effect to the intention of parties so far as that can be done without violating the rules of language or of law, and so far as such intention can be read from the words they saw fit to use, by the aid of all the helps that may properly be resorted to for that purpose. But the very fact that construction is called for suggests existing uncertainty. Where that does not exist,— where language is plain,— there is no reason for construction. Effect must then be given to the obvious meaning, and not, by means of judicial construction, make a contract for parties different from that which they made for themselves.

"Capacity of the bulkhead now there:" What do those words mean as used in the grant under consideration? They plainly refer to a then existing bulkhead, and conveyed the right to use the water through it to its capacity, or an equivalent amount of water, for the purpose of creating power. Unlike many deeds conveying water privileges for power, the grant in question did not convey a certain number of inches of water under a given head, as in *Jackson Milling Co. v. Chandos*, 82 Wis. 437, or a certain number of inches of water without specifying any head, as in *Blanchard v. Doering*, 21 Wis. 477. The grant did not convey water to the full extent and capacity of a bulkhead 13.07 feet wide by 6.89 feet deep. If we were to read the grant as if such language were included therein, we would fail to give effect to the significant words of limitation, "the" and "now there." They refer, unmistakably, to an existing bulkhead, and the water privilege conveyed was referable, as a means of measurement, to that particular bulkhead, with all the surrounding conditions, including the rack to prevent débris from passing into the flume, the size of the flume, its shape, its location, and all obstructions in any way influencing the flow of water. That is so obviously the meaning of the lan-

guage in question that we have nothing to do with the rules of construction in determining that question. There is room for but one reasonable meaning; therefore no room for construction and no need for a reference to authorities.

The parties having defined the water conveyed by limiting it to the capacity of a particular opening under the conditions surrounding it as stated, it left the amount somewhat difficult of ascertainment, it is true, especially after a lapse of many years, a change in the conditions, and a desire to use the water through a different bulkhead and with different attachments. But so long as the parties saw fit to insert in the grant plain words of limitation, pointing to particular instruments for measuring the water, we must hold to such plain meaning, and not, for the purpose of relieving parties from difficulties which were not properly provided against at the proper time, put words into the grant by construction. That would be a violation of rules of law by judicial construction, and courts are not permitted to do that. *Mississippi River Logging Co. v. Wheelihan*, 94 Wis. 96.

In *Loverin v. Walker*, 44 N. H. 489, we have a good illustration of the strictness with which courts hold parties to the meaning of language used in conveying water privileges, by viewing it in the light of the circumstances existing at the creation of the grant. The description of the privilege there conveyed was, "the right to take sufficient water for one tub wheel." It was in a conveyance of a mill formerly operated by such a wheel, but the wheel had been carried away by a freshet a short time previous. There were other owners of power at the same point, and it was evident their rights were not intended to be infringed upon. If the conveyance were so construed as to permit a tub wheel of any size, that would carry the right to all the water of the stream. In those circumstances the court readily reached the conclusion that "the grantee was not obliged to use a tub wheel, or the particular tub wheel that had been carried

away; but he could take no more water than the amount required to operate a wheel of the kind and size of the one previously in place;" that the language of the deed was clearly intended to designate the old wheel as an instrument for measuring the quantity of water conveyed by the grant, but not to designate the means of using the water; and that it was left to be determined what amount of water was required for such a wheel as the old one, and then that it could be used as the grantee should elect.

So, in *Doan v. Metcalf*, 46 Iowa, 120, cited by defendants' counsel, the language was, "the right to use water to the amount of the issue of the wheel now in said mill, supposed to be six hundred inches." The court held that the water necessary to operate that particular wheel, up to the capacity of its working power, was the measure of water conveyed; that it was left for experience and mechanical skill, aided by the laws of hydraulics, to determine such amount, and that when determined, the water was available to operate any wheel which the grantee might see fit to use; that the wheel mentioned in the grant did not limit the manner or means by which the water was to be used, but designated merely the instrument for measuring the quantity which the grantee could take under the grant.

Again, in *Cummings v. Blanchard* (N. H.), 36 Atl. Rep. 556, a quite recent case, where the conveyance was, "the quantity of water that shall be discharged from the flume or bulkhead through an aperture of 200 square inches at the gate under a fifteen-foot head," it was held that those words did not prescribe a condition or manner in which the water should be used, but that they were words of measurement; that the grantee was entitled to water equivalent to that which would be discharged under the conditions mentioned, and that it was the duty of the grantee to construct his gate with a gauge thereon so as to indicate any infringement of the grantor's rights at any given head of water;

that the aperture should be contracted as the head was raised, if that occurred, and enlarged if the opposite occurred, so that the grantee would receive at all times the equivalent of water that would flow constantly under the conditions mentioned in the grant.

*Jackson Milling Co. v. Chandos*, 82 Wis. 437, followed the same line of reasoning, holding that a conveyance of 2,000 inches of water under an eleven-foot head did not limit the manner of drawing the water to an opening of the size and under the head mentioned, or contemplate any such elements of uncertainty as an increase of the natural flow by the use of an efflux tube, or decrease by the retardation of a water wheel in operation, but that the size of the opening and head designated were the means of determining the volume of water the grantee was privileged to take, the intent being to grant the right to take, by a constant flow, water equivalent to that which would pass under natural conditions, under an eleven-foot head, through an opening of 2,000. inches in area cut in the side of a flume; that the amount being determined, the conditions under which it might be drawn were not regulated by the grant.

So the words, " the bulkhead now there," as used, pointed merely to a particular opening, with the conditions surrounding and affecting it, all to be considered in determining the quantity of water conveyed by the grant,— the size of the flume, its form, the obstructions in it, and every other circumstance affecting the flow of water, all forming a part of the instruments of measurement. In no other way can significance be given to the words, " the bulkhead now there," which the persons using them evidently intended, and in no other way can their natural, comprehensive meaning be given to them. In the absence of circumstances showing clearly an intention to the contrary, words in a contract are presumed to have been used in their comprehensive sense, and as understood by the mass of mankind. That requires

Appleton Paper & Pulp Co. vs. Kimberly & Clark Co. and another.

that the words under discussion should be held to apply to the entire situation at the time of the creation of the grants, there being nothing indicating a contrary intent. To say otherwise would violate the rule that words cannot properly be forced out of their proper signification, even to effect the intention of parties.

The foregoing does not, as suggested by counsel, insert words of limitation into, but rather gives plain effect to every word of, the grant as intended at the time created. If it leads to some uncertainty as to the volume of water to which plaintiff is entitled, it is an uncertainty, not in the instruments of measurement, but of the quantity of water which they will measure. That uncertainty the parties placed in the grant, and it is not the province of the court to substitute something else for the language the parties saw fit to use, because of the difficulty of determining the amount of water under the circumstances which they contemplated. We must take the instrument as the parties made it, and determine the amount of water it privileged the grantee to take like any other question of fact, and when so determined the plaintiff can use such amount of water to create power in any way it may see fit.

The foregoing disposes of the questions raised by plaintiff's appeal, unfavorably to it. The next and remaining question is that raised by defendants, assigning as error the holding of the trial court that the words "full extent and capacity" entitle plaintiff to take water through the bulk-head, or have the amount it may draw determined, regardless of drawing down the head and sacrificing volume to power. The most that is claimed as to the meaning of the words, "full extent and capacity," is that they are susceptible of two reasonable constructions, and therefore that the rule applicable under such circumstances, that the construction should be adopted most favorable to the grantee, sustains plaintiff's theory. But will the words admit of two

reasonable constructions? That must be determined in the light of the circumstances existing at the origin of the grant. Previous thereto, parts of the power had been conveyed, and part of the power created by the dam was appurtenant to lands on the other side of the stream. Looking at the language under discussion in the light of such circumstances, it is quite clear to our minds that it has but one rational, reasonable meaning, and that is, water equivalent to that which will pass through the bulkhead without so drawing down the head as to use the water in a wasteful way. The learned trial court well said that the language of the grant permitted the grantees to take so much water as could be drawn in a proper manner, and then said there was no limitation in the grant. The two ideas seem hardly to be consistent, unless it can be said that the proper manner of using water for power will admit of its use in a wasteful way, regardless of producing the maximum of power from a given volume. We cannot sanction that view, but must hold, not only that the words "full extent and capacity" contemplate a measurement of the water when taken in a proper manner, as the trial court said, but that a "proper manner" does not permit of such shortening of the head, by the velocity with which the water is drawn, as to materially sacrifice volume to power.

If the bulkhead were in actual use at the time of the grant, and water being drawn in the manner contended for by plaintiff, that circumstance might turn the scales in favor of the construction of the language under discussion adopted by the trial court. The circumstances of the case in that regard are very much like those in *Cummings v. Blanchard, supra* (36 Atl. Rep. 556). There, while the descriptive words of the grant were "privilege to take water that will pass through an aperture of 200 square inches at the gate under a fifteen-foot head," there was no pen-stock in place through which to draw the water; hence the court

Appleton Paper & Pulp Co. vs. Kimberly & Clark Co. and another.

held that the head mentioned in the grant was to be taken as with the water at rest, and that the diminution of the head, when in actual use, was at the expense of the grantee; that is, that the capacity was not to be computed with reference to a working head of fifteen feet, but the working head obtainable from a standing head of fifteen feet. When the grant in question originated the bulkhead was not, and had not been, in use for some time, so there is no circumstance warranting a construction of the language used that will extend it to fit a wasteful method of using the water.

The evidence abundantly shows, as reason and common sense, directed by the most ordinary knowledge of hydraulics, teaches, that in figuring the size of a flume or bulkhead requisite to carry a given amount of water to a wheel, regard must be had to the certainty that the head will drop as the velocity of the water increases, and that there will be a corresponding loss of power, so that the opening to the wheel and the flume must be of sufficient capacity to carry the water without a material loss of head. So, the water which a bulkhead or flume of a given size will carry without materially reducing the head and thereby sacrificing the power of the water, is plainly its full extent and capacity.

The foregoing leads to the conclusion that the decision of the trial court, to the effect that the plaintiff, its successors or assigns, are entitled to draw water through the bulkhead opening described in the findings to the best advantage to them, regardless of drawing down the head, cannot be sustained, and that such part of the judgment as gives effect to the decision in that particular must be reversed.

It seems that the best interests of all parties require plaintiff's rights to be definitely settled by the final decree, so that it may be known by all such parties, and those that may come after them, how much water plaintiff is entitled to draw from the pond. That can be ascertained without serious difficulty, and should be before final judgment is en-

Appleton Paper & Pulp Co. vs. Kimberly & Clark Co. and another.

tered; and to that end further testimony should be taken, if that course be found necessary. The finding of the court stands undisturbed that water cannot be economically drawn for hydraulic purposes, through such a bulkhead opening as described in such finding, at a greater velocity than 120 feet per minute, which we suppose means that it can be drawn at that rate. Having regard to that, and the instrument of measurement contemplated in the grant of September 20, 1862, namely, a flume or bulkhead 13.07 feet wide, 12 feet long with the stream, 6.89 feet deep, measuring from the crest of the dam as it now stands, and obstructed with a rack of the character described in the judgment, the amount of water which can be economically drawn under such conditions and limitations should be determined and the decree then framed so as to define plaintiff's rights accordingly.

*By the Court.*— That part of the judgment appealed from by plaintiff is affirmed; that part of the judgment appealed from by defendants, relating to the amount of water which plaintiff is entitled to draw from the pond, is reversed, and the cause remanded with directions to determine how much water per minute, in cubic feet, plaintiff is entitled to draw from the pond under the conditions and limitations indicated in the opinion, and that further evidence be taken to that end if such course be found necessary by the trial judge; that such fact having been determined, the decree be then entered in accordance therewith. No costs are allowed in this court to either party, except that plaintiff shall pay the clerk's fees.