KIMBERLY-CLARK COMPANY, Appellant, vs. PATTEN PAPER
COMPANY, LIMITED, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*February 21—April 8, 1913.*

*Waters: Dams: Grants of water power: Determination of rights of
respective grantees: Equity: Parties: Limitation of actions: Ad-
verse possession: Laches: Former adjudication: Privity: Deeds:
Construction: Velocity at which water is to be taken: Width
of opening:* Stare decisis: *Practical construction: Use of water
on specified premises: Actual or theoretical horse power.*

1. In an equitable action between two of the grantees of separate
   interests in a water power, to determine the extent of their
   respective rights in the water and to restrain wrongful in-
   vasion of or interference with the rights of the plaintiff therein,
   other grantees of similar rights though proper are not neces-
   sary parties.
2. Where both parties to such action were using the water as of
   right, and the injury consisted in one continuing from day to
   day to use more than his proper share, each taking only the
   water as it flowed by for the creation of power, and the volume
   fluctuated so that at times the utmost use by either did not
   exceed his right and at other times the volume was so small
   that the use by one did encroach upon and impair the right of

the other, no statute of limitations or adverse possession will bar an action to redress such wrong.

3. So, also, where the defendant in such action interposes a counterclaim alleging similar wrongs on the part of the plaintiff and asking affirmative relief, thereby opening up the whole subject of the several grants for equitable consideration and decision, neither the defense of limitation nor that of laches will avail him.

4. Where the rights of the grantor of a residuary interest in a water power had been adjudicated prior to the grant, his grantee, being in privity with him, is bound by the decree.

5. But as to a grant of a partial interest in such water power made by the same grantor, prior to the decree, to one who did not become a party to the suit in which that decree was made, although such interest finally vested by mesne conveyances in the grantee of such residuary interest and the water taken under both grants was commingled in use at its mill, such residuary grantee is not estopped nor conclusively bound by the decree.

6. In judgments or decrees which do not determine status, but relate to property rights or interests, privies are those who succeed to the ownership of that property, or some right or interest therein, under one of the parties to the litigation.

7. In a grant of water power, if the size of the opening only is given and the volume of water is not otherwise fixed by the terms of the grant, the water should be taken at its most efficient velocity, namely, at the rate of two feet per second; but this rule does not apply to a grant of so much water through a specific opening as the grantee may need for whatever machinery may be erected on certain described premises, where such machinery requires a volume greater than would be obtained at that velocity, even though the drawing of the water at an increased velocity is wasteful. [Whether, after having erected machinery on the premises in question requiring for its operation a certain amount of power, the grantee could increase the volume of water to which it was entitled under such a grant by thereafter erecting machinery on said premises requiring a greater amount of power, not decided.]

8. Where a grant was made of water to be taken from the south fifteen feet of a certain bulkhead, and the aperture made by the grantee was thirteen feet six inches wide, the balance of the fifteen feet being taken up with the side walls or supports of the flume and opening in the bulkhead, it was no ground for equitable interference that the timbers supporting such walls extended sixteen inches beyond the fifteen feet, where they did not encroach upon the property of the plaintiff.

9. In the construction of a grant the doctrine of *stare decisis*, though the decision be between other parties, and the practical construction and long acquiescence therein by the parties to the grant and their assigns, are entitled to much weight.

10. Where a grant was of the right to draw and use for hydraulic purposes "so much water as not to exceed in all 200 horse power," and this was followed in the same instrument by a covenant for quiet enjoyment which described the thing granted as "200 horse power net," it is *held* that the words "horse power" in the granting clause were ambiguous, as meaning either available or theoretical horse power, and the use of the word "net" indicated that actual or available horse power was intended.

11. In a grant of water power the words "so much water not exceeding 1,000 inches as [the grantee] may need for any machinery which he or his assigns may erect" on a certain lot, are construed to mean water for use in driving machinery on the designated lot only.

12. The evidence in this case is *held* to sustain findings to the effect that certain grants of a specified number of inches of water meant theoretical inches, and grants of specified horse power meant theoretical horse power.

APPEALS from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

This suit was commenced November 10, 1903, for the purposes (1) of determining what volume of water the defendant is entitled to draw from that mill-pond which furnishes the so-called "West Water Power;" (2) restraining the defendant from withdrawing from said mill-pond more than the volume of water so determined; (3) restraining the defendant from drawing from said mill-pond upon lot 9 of Grand Chute Island in the Fourth ward of the city of Appleton as per John Stevens's map of 1879, more water than sufficient to furnish 700 horse power; (4) for damages for past excessive use of water.

The defendant interposed (1) a plea in abatement for defect of parties; (2) a plea of the ten-year statute of limitations; (3) an answer to the merits; (4) a counterclaim calling for the ascertainment and determination of the water power which plaintiff and defendant own under their respec-

tive grants, and the volume of water each is entitled to draw from said mill-pond according to priority of grant, and the places at which they may draw it; (5) restraining plaintiff from using more water or power than the amount so determined; (6) at any other place than the place so ascertained or determined; (7) also seeking an award of damages to the defendant for plaintiff's excessive and wrongful use of water. Plaintiff by reply to this counterclaim interposed defensive matter, but did not plead any statute of limitations. This counterclaim avers a grant of August 27, 1864, by West to Woodward, and that under this and other grants the defendant is entitled to water sufficient to produce at least 675 horse power, making at least 450 horse power under the Woodward grant, and that for six years next prior to the commencement of the action the plaintiff has, by its excessive use of water under other grants, interfered with and impaired defendant's rights under such grants.

Findings of fact well supported established that Grand Chute Island divides the Fox river at Appleton into the north and south channels. About 1857 Edward West, owning said island and the south shore of said south channel, built a bulkhead across the south channel from the head of said island and a wing-dam from such head into said north channel, and those structures made the West water power. In 1870 West made a canal for power from the pond made by said bulkhead and wing-dam, extending about 1,600 feet in the general direction of the river flow, through said island, nearly to its lower end. In 1876 the wing-dam was replaced by a solid dam from the head of said island to the north shore of the river and the said bulkhead was rebuilt higher, whereby, and by flashboards permanently maintained on said dam, the head of said power was increased 2.4 feet. The improvement of 1876 which so increased the head was made by a company and paid for by subscriptions given by the public for the public benefit. The dam was built on land no part of which was

owned by this company, although the owners of the land were members of the company and contributed to the said fund. This company never used or attempted to control any of the water power otherwise than by making a quitclaim deed relating to the West water power to West and his heirs and assigns, declaring that the latter and those holding the lots or water power from or under them might draw water from the pond to fill West's canal and through said bulkhead for hydraulic purposes without let or hindrance by such association.

"The average flow of Fox river at Grand Chute Island is about 150,000 cubic feet per minute, 4-7 of which, or about 86,000 cubic feet per minute, is appurtenant to said West water power. Said flow of the river varies from less than 20,000 cubic feet per minute in dry seasons, to more than 500,000 cubic feet per minute in freshets. To furnish 137,397 cubic feet per minute required to fill all said grants prior to the grant of the remainder and furnish the volume due said north shore of the river, the whole flow of the river must be at least 240,000 cubic feet per minute. For considerably more than half the time said flow is less than 200,000 cubic feet per minute."

"The following table [see page 74] shows the dates, ownership, and power granted of all grants by said West to the parties hereto and to others, prior to said grant of the remainder, and the volume of water and power due each grant at the normal heads at the lots conveyed with the grants respectively; the volume due each grant prior to the increase of head in 1876, wherein no head is specified, of horse power and inches of water being computed at the prior head, and the present power of such volume at the increased head."

West conveyed away his land in parcels and his water power so that after the grant of February 26, 1882, and before the grant of the rest and residue on June 18, 1887, there was considerable land on the north and south sides of the canal belonging to West. This land abutted upon the water power, but by reason of prior grants of water power could not be given a fraction of the water power proportionate to area and location without materially interfering with the prior grants

of power made by West. West did not convey his water power in proportion to the area of land conveyed, and he seems in all cases to have limited the power granted by specifying the number of inches of water or the number of horse power, except in the grant of August 27, 1864, called the Woodward grant, and the grant of June 18, 1887, called the grant of the remainder. Besides the increase of head made by the improvement of 1876, there is an increase in head from the up-stream end at the bulkhead to the down-stream end along the canal of about nine tenths of a foot, and the

| Date of grant | Present owner | Limitations | Head | Volume in cubic feet per minute | H. P. at present head |
|---|---|---|---|---|---|
| **1857** | | | | | |
| July 16 | Appleton Machine Co.. | 200 inches | 7.1 ft. | 1,770 | 32 |
| Sept. 1 | Stebbins............... | 25 h. p. | 10 ft. | 1,320 | 25 |
| **1861** | | | | | |
| Sept. 16 | Appleton Woolen Mills | 40 h. p. | 7.1 ft. | 2,974 | 53 |
| **1863** | | | | | |
| Feb. 7 | Appleton Machine Co. | 200 inches | 7.1 ft. | 1,770 | 32 |
| Dec. 4 | Appleton Machine Co. | 100 inches | 7.1 ft. | 885 | 16 |
| **1864** | | | | | |
| July 20 | Marston & Beveridge.. | 40 h. p. | 7.1 ft. | 2,974 | 53 |
| July 28 | Appleton Woolen Mills | 20 h. p. | 7.1 ft. | 1,487 | 27 |
| Aug. 27 | Defendant............. | So much as needed for. etc. | | 29,412 | 492 |
| Sept. 5 | Defendant............. | 1,000 inches | 7.1 ft. | 8,850 | 159 |
| **1867** | | | | | |
| Dec. 23 | Defendant............. | 30 h. p. | 7.1 ft. | 2,230 | 39 |
| **1868** | | | | | |
| Oct. 8 | Toy Company.......... | 25 h. p. | 10 ft. | 1,320 | 25 |
| **1869** | | | | | |
| April 15 | Defendant............. | 75 h. p. | 7.1 ft. | 5,575 | 99 |
| **1870** | | | | | |
| April 5 | Plaintiff................ | 3,000 sq. inches | 10 ft. | 31,702 | 600 |
| **1873** | | | | | |
| Jan. 6 | Appleton Woolen Mills | 10 h. p. | 7.1 ft. | 743 | 13 |
| **1876** | | | | | |
| Jan. 19 | Valley Iron Works..... | 40 h. p. | 7.1 ft. | 2,974 | 53 |
| **1877** | | | | | |
| Dec. 4 | Marston & Beveridge.. | 10 h. p. | 9.5 ft. | 555 | 10 |
| **1879** | | | | | |
| Dec. 29 | Defendant............. | 200 h. p. net. | 10.4 ft. | 12,692 | 250 |
| **1881** | | | | | |
| July 16 | Defendant............. | 400 h. p. | 10.4 ft. | 20,308 | 400 |
| Aug. 17 | Webster Planing Mill.. | 30 h. p. | 9.5 ft. | 1,667 | 30 |
| Oct. 19 | Appleton Woolen Mills | 20 h. p. | 9.5 ft. | 1,112 | 20 |
| **1882** | | | | | |
| Feb. 26 | Defendant............. | 100 h. p. | 10.4 ft. | 5,077 | 100 |
| | | Totals | | 137,397 | 2,528 |
| **1887** | | | | | |
| June 18 | Plaintiff................ | All power not theretofore transferred subject to all prior conveyances. | | | |

court found that the present normal head is 9.5 feet at the bulkhead and 10.4 feet at the paper mills of the plaintiff and defendant on the canal.

The plaintiff's paper mill, erected in 1887, is situate on the south side of the canal near its lower end, and it claims and owns under said grant of June 18, 1887, all the rest and residue of the water power not theretofore granted away by said West, and also claims and owns under said grant of April 5, 1870, 3,000 square inches of water at a uniform head of ten feet. This latter grant was originally made to the Appleton Iron Company and was included with a grant of a parcel of land at the lower end of the canal now owned by the plaintiff, but not used for any purpose requiring the expenditure of water power. To fill this grant of 3,000 square inches at a head of ten feet requires a volume of 31,702 cubic feet of water per minute. Plaintiff now has in said mill water wheels requiring at a head of ten feet a volume of 63,865 cubic feet per minute to run them at full capacity. This grant of 3,000 square inches of water, if drawn and used on the tract specified in the grant, would be wasted or discharged into the north channel of the Fox river if discharged by the shortest route. Plaintiff wastes or discharges it into the south channel, but this results in no loss or injury to the defendant.

The defendant claims and owns under this grant of August 27, 1864, called the Woodward grant, also the grant of 1,000 inches of water made September 5, 1864, the grant of thirty horse power made December 23, 1867, and the grant of seventy-five horse power made April 15, 1869. The volumes of water required to fill said grants at a head of seven and one-half feet are respectively 8,935, 2,200, and 5,500 cubic feet per minute, which volumes at the present head of 9.5 feet will produce respectively 160, 39, and 99 horse power. No part of the power of either of these three grants has been used on either of the lots with which it was granted since

1885.    Defendant also owns power granted by the said West with contiguous lots on the north side of the canal near the lower end thereof, namely, the said grant of 200 horse power net of December 29, 1879, the said grant of 400 horse power dated July 16, 1881, and the said grant of 100 horse power dated February 26, 1882.    The volumes of water required to fill said last mentioned three grants at a head of $9.5 + .9 = 10.4$ feet are respectively 12,692, 20,308, and 5,077 cubic feet per minute.

The learned circuit court found, upon evidence tending to support such findings, that all grants by West of a specified horse power had reference to a theoretical horse power, and that the actual available horse power is eighty per cent. of this theoretical horse power.    In all such grants by West, inches of water meant theoretical inches, evidently using the latter term as employed in *Janesville Cotton Mills v. Ford,* 82 Wis. 416, 52 N. W. 764; that ordinarily the velocity for passage of water through flumes or bulkheads to be used for power is two feet per second, and the drawing at any greater velocity causes undue waste by reducing the head.    There was no such adverse, exclusive, or uninterrupted user of water by the defendant under the Woodward grant as is necessary for a basis of limitation or prescription and no estoppel *in pais.* Respecting the grant of December 29, 1879, now owned by defendant, the court found that the original deed from West to Fleming specified, in addition to the land, the thing granted as follows:

"Together with the right to draw from the canal and use for hydraulic purposes on the aforesaid tract of land so much water as not to exceed in all 200 horse power."

This deed contained a clause of warranty, however, as follows:

"Warranting among other things that the above bargained premises with 200 horse power net of water power as above granted to be used for hydraulic purposes on said premises in

the quiet and peaceable possession of said party of the second part, his heirs and assigns, he will forever warrant and defend."

Title to this lot and this 200 horse power of water power came to defendant through warranty deeds, in each of which the thing granted was described as 200 horse power, but no words indicating whether the power granted was available or theoretical horse power.

The circuit court made other findings of fact, a synopsis of which is here presented and grouped together because they relate to a separate conclusion of law to the effect that the parties to this action were, as to the said Woodward grant of August 27, 1864, concluded by the judgment of this court and the judgment of the circuit court pursuant to the mandate of this court in a certain action entitled *Valley Pulp & Paper Co. v. West,* reported in 58 Wis. on p. 599 (17 N. W. 554). Such findings are also relevant to a construction of the grant of April 27, 1864, treating such construction as an open question. That case was decided in this court on November 20, 1883, and the plaintiff claims under West, who was a party to that action, by its grant of the residue dated June 18, 1887. It also claims and holds under the grant of 3,000 square inches made April 5, 1870, by West to the Appleton Iron Company. As to this last, West had parted with his title long prior to the rendition of the judgment relied upon as an estoppel. The owner of that interest was not a party to the action in which such judgment was rendered, and the plaintiff is therefore in the possession of, holding, and owning its residuary title through a conveyance from one of the parties to that action after judgment therein, and its title to 3,000 inches of water under and through another person not a party to said action nor estopped by said judgment. The defendant holds the Woodward grant under or through the Valley Pulp & Paper Company, plaintiff in the action mentioned, and its other grants by mesne conveyances under West, who

parted with his title thereunto prior to the judgment in question. The Woodward grant was of a tract of land on and including fifteen feet of said bulkhead, together with "the privilege of drawing from said bulkhead so much water as said Woodward, his heirs or assigns, may need for whatever machinery may be erected on said premises." Prior to 1880 no machinery had been erected on this Woodward lot and no water drawn under the grant last mentioned. In 1880 the Valley Pulp & Paper Company began to build a pulp and paper mill on said lot with machinery therein to be run by water drawn under said grant. To that end it placed in said fifteen feet of bulkhead a flume fourteen feet in the clear for drawing water through said bulkhead to run said machinery, and placed the bottom of said flume even with the ordinary bottom of the opening in the bulkhead. This mill was completed in 1881, and the machinery then in the mill required over 445 horse power theoretical for its operation. This suit of the *Valley Pulp & Paper Co. v. West* was brought in the circuit court for Outagamie county in 1880 to restrain West from diverting the water of the mill-pond from a point near this fifteen feet of bulkhead to a point below or down stream from the Woodward lot. The plaintiff claimed it had the right by said Woodward grant to draw through said flume all the water needed to run said machinery erected or in process of erection on said Woodward lot, and that the threatened diversion would impair that right. West claimed that only such volume of water could be drawn through said flume as could have been drawn through the openings of about nine feet in said fifteen feet of bulkhead as these openings were at the time of the Woodward grant, and at a velocity of not more than two feet per second. After the decision in this court and on June 3, 1885, West conveyed to the defendant a strip of land lying along the north side of the Woodward lot six feet wide and another strip of land on the west side of said lot, and in this deed recited the decision of this court

above referred to, "where the legitimate rights of the parties in suit are clearly defined." Since the defendant received the last mentioned grant the flume has not been increased in width nor has its bottom been made lower. Its walls consist of three-inch plank fastened to uprights twelve inches square. The present opening for drawing water is thirteen feet six inches wide, wholly within said fifteen feet of bulkhead. Part of the timbers supporting the walls of the flume extend about sixteen inches outside of said fifteen feet. The defendant and its grantor have been since 1881 drawing through said flume water needed to run the machinery erected on said Woodward lot during such time in each year as the flow of the river appurtenant to the West power was sufficient to operate all the mills on this power, discontinuing such use when the water was not so sufficient. The machinery now erected on the Woodward lot requires 492 horse power theoretical to operate it efficiently at a head of 9.5 feet, and to produce said power requires the drawing through the said flume at said head of 29,412 cubic feet of water per minute. It was an undisputed fact in the action of the *Valley Pulp & Paper Co. v. West* that water was at the time of the trial of said action being drawn through said flume to run the machinery on said Woodward lot at a velocity of four and two-thirds feet per second. The size of this Woodward lot by length of boundary lines was 150 feet, 128 feet, 150 feet, 136 feet. The court found as conclusions of law:

"I. Whenever the flow of Fox river appurtenant to said West water power is insufficient to fill all said grants of said West prior to said grant of the remainder, to the extent that water is being drawn under and within them, the present owners of said grants are entitled to draw water to fill their grants, at said normal heads, while the works are of capacity to maintain said normal heads, in the order of their priority of date.

"II. Defendant has right to draw under said Woodward grant, through its flume in said 15 feet of bulkhead conveyed

by. said grant, as much water as it needs for the machinery on said Woodward lot, at all times when the flow of said river appurtenant to said West water power is sufficient to furnish such volume and 13,180 cubic feet of water per minute, or so much thereof as is being used, due said grants prior to the Woodward grant. Defendant has right to thus draw, at said head of 9.5 feet, while it is practicable to maintain such head, 29,412 cubic feet of water per minute, and may draw it at such velocity as is needed to run said machinery.

"III. Since to narrow said flume by the distance that part of the timbers of its walls are outside of the 15 feet of bulkhead conveyed by said Woodward grant, would increase the velocity of the volume of water needed to run the machinery on said Woodward lot and so increase such volume, and in view of the long use of said flume at its present or a greater width, it need not be thus narrowed.

"IV. Defendant's rights under said Woodward grant as herein stated are determined, for the parties hereto, by said decision of the supreme court in said action of *Valley Pulp & Paper Co. v. West* and by the said final judgment in said action.

"V. Defendant has a right to draw, at said head of 9.5 feet, to fill its said grants of 1,000 inches of water, 30 horse power and 75 horse power, respectively 8,850, 2,230 and 5,575 cubic feet of water per minute, to run machinery on the lots, respectively, conveyed with said respective grants, whenever the flow of said river appurtenant to said West water power unused under prior grants of said West is sufficient to furnish said volumes, while it is practicable to maintain said head.

"VI. Defendant can only draw water as aforesaid under said Woodward grant and said grants of 1,000 inches of water, 30 horse power and 75 horse power, to run machinery on the respective lots conveyed by the deeds wherein said grants were respectively made; and it must be enjoined from otherwise drawing water under said grants.

"VII. The owner of each of said grants of West of horse power or inches of water to be filled by water drawn from the pond of said West water power, which specifies no head and was made prior to said increase of head, in 1876, is entitled to use, at the increased head, the volume of water due such grant at the head before such increase.

"VIII. Plaintiff has right to draw 31,702 cubic feet of water per minute or any part thereof under its said grant of 3,000 square inches of water to run its paper mill, whenever the flow of said river appurtenant to said West water power, and unused under prior grants by said West which require a volume of 60,567 cubic feet of water per minute to fill them at said normal heads, is sufficient to furnish said 31,702 cubic feet per minute or any part of it. Plaintiff must be enjoined from drawing water under said grant of 3,000 square inches of water, in excess of its said right.

"IX. Defendant has right to draw at said head of 10.4 feet, while the works are of capacity to maintain such normal heads, 33,000 cubic feet of water per minute under its said grants of 250 and 400 horse power, theoretical, and 5,077 cubic feet of water per minute under its said grant of 100 horse power, theoretical, to operate its said paper mill, whenever the flow of said river appurtenant to said West water power and unused under prior grants by said West is sufficient to furnish said volumes respectively. Said prior grants prior to said grants of 250 and 400 horse power require a volume of 96,541 cubic feet of water per minute at said normal heads, and those prior to said grant of 100 horse power exclusive of said grants of 250 and 400 horse power, require a volume of 99,320 cubic feet of water per minute at said normal heads, to fill them. Defendant must be enjoined from drawing water under its said grants of 250, 400, and 100 horse power in excess of its said rights.

"X. Plaintiff has right to draw under its said grant of the remainder only the excess of the flow of said river appurtenant to said West water power over that used under and within all grants prior thereto by said West, which prior grants require to fill them a volume of 137,397 cubic feet of water per minute at said normal heads. Plaintiff must be enjoined from drawing water under said grant of the remainder in excess of its said right.

"XI. Said present owners of right to draw water under grants from said West have right, according to the priority of their grants, to have the level of said pond kept substantially as high as the tops of said flashboards, to maintain said normal heads for their use, so far as the flow of said river appurtenant to said West water power is sufficient to keep it at such

level.   When said level falls below such height, said owners should suspend drawing water under their grants, in the inverse order of the dates of their grants, sufficiently to maintain said level and heads."

For the plaintiff there was a brief by *Hooper & Hooper,* a separate brief by *Jones & Schubring,* and oral argument by *Moses Hooper* and *B. W. Jones.*   They argued, *inter alia:* (1) The former adjudication was not conclusive upon plaintiff.   (2) The language of the grant under which defendant claims does not justify drawing with wasteful velocity. *Appleton P. & P. Co. v. Kimberly & C. Co.* 100 Wis. 195, 197, 75 N. W. 889; *Schuylkill N. Co. v. Moore,* 2 Whart. (Pa.) 477; *Doan v. Metcalf,* 46 Iowa, 120; *Loverin v. Walker,* 44 N. H. 489; *Covel v. Hart,* 56 Me. 518; *Dexter S. P. & P. Co. v. Frontenac P. Co.* 20 Misc. 442, 46 N. Y. Supp. 363, 371; *Furner v. Seabury,* 135 N. Y. 50, 31 N. E. 1004; *Oregon I. Co. v. Trullinger,* 2 Oreg. 311; *S. C.* 3 Oreg. 1; *Fogus v. Ward,* 10 Nev. 269.   (3) The statute of limitations does not apply to such a case as this.   *Cedar Lake H. Co. v. Cedar Creek H. Co.* 79 Wis. 297, 48 N. W. 371; *Ramsdale v. Foote,* 55 Wis. 557, 13 N. W. 557; *Gilman v. S. & F. du L. R. Co.* 40 Wis. 653; *McGowan v. M. P. R. Co.* 23 Mo. App. 203; *Colrick v. Swinburne,* 105 N. Y. 503, 12 N. E. 427; *Reed v. State,* 108 N. Y. 407, 15 N. E. 735; *Wright v. Syracuse R. Co.* 49 Hun, 445, 3 N. Y. Supp. 480, affirmed 124 N. Y. 668, 27 N. E. 854; *Williams v. Allison,* 33 Iowa, 278; *Reihl v. Likowski,* 33 Kan. 515, 6 Pac. 886; *Vail v. Mix,* 74 Ill. 127; *Coe v. Wolcottville Mfg. Co.* 35 Conn. 175; *Carlisle v. Cooper,* 19 N. J. Eq. 256; *Tootle v. Clifton,* 22 Ohio St. 247.   (4) The plea of adverse possession does not avail, since the use complained of is in excess of the grant; moreover, there has been no continuity of user; and the proofs show the use to have been permissive and not adverse.   (5) Grants of water to run machinery on one lot do not authorize its use on another lot.   *Valley P. & P. Co.*

*v. West,* 58 Wis. 599, 612, 17 N. W. 554; *Minn. M. Co. v. Hobart,* 26 Minn. 37; *Groat v. Moak,* 94 N. Y. 115, 126; *Washabaugh v. Oyster,* 18 Pa. St. 497; Gould, Waters, §§ 318*a,* 320; 3 Farnham, Waters, 2286.

*Geo. G. Greene,* for the defendant, contended that the decision in *Valley P. & P. Co. v. West,* 58 Wis. 599, 17 N. W. 554, was conclusive on plaintiff; that every grant of a right or privilege carries with it, by necessary implication, everything necessary to its enjoyment which the grantor has it in his power to grant (*Stanwood v. Kimball,* 13 Met. 526; *Benedict v. Barling,* 79 Wis. 551, 48 N. W. 670; *Galloway v. Bonesteel,* 65 Wis. 79, 26 N. W. 262; *Gray v. Saco W. P. Co.* 85 Me. 526, 530, 27 Atl. 455; *Cummings v. Parker,* 61 N. H. 516); that defendant's rights were protected by the rule of *stare decisis* as effectively as by that of *res adjudicata* (*Van Valkenburgh v. Milwaukee,* 43 Wis. 574; *Pittelkow v. Milwaukee,* 94 Wis. 651, 655, 69 N. W. 803; *Cawley v. La Crosse City R. Co.* 106 Wis. 239, 82 N. W. 197; *Bibb v. Bibb,* 79 Ala. 437; *Bright v. Esterley,* 199 Pa. St. 88, 48 Atl. 810; *Johnson's Adm'r v. Citizens Bank,* 83 Va. 63, 1 S. E. 705; *Minnesota Co. v. National Co.* 3 Wall. 332; *Shore v. Stevens,* 61 Ind. 441); that neither a limitation of velocity to two feet per second, nor a limitation of the width of the flume to eight feet, can be added to the limitations of the West decision; that plaintiff's cause of action is barred by laches and by limitation; that so far as defendant's use exceeded its grant, it could hold by prescription; that defendant's grant of 200 horse power net was of 250 horse power theoretical (*Harrington v. Smith,* 138 Mass. 92; *C., M. & St. P. R. Co. v. Wright L. Co.* 123 Wis. 46, 100 N. W. 1034; *Jacobs v. Spalding,* 71 Wis. 177, 36 N. W. 608; 17 Am. & Eng. Ency. of Law, 2d ed. 7); that defendant is not confined to the use of water for machinery on the lot described in its grant (*Appleton P. & P. Co. v. Kimberly & C. Co.* 100 Wis. 195, 75 N. W. 889; *Doan v. Metcalf,* 46 Iowa, 120; *Cromwell v. Selden,* 3 N. Y.

253; *Olmsted v. Loomis,* 9 N. Y. 423; *Hall v. Sterling I. &
R. Co.* 148 N. Y. 432, 42 N. E. 1056; *Albee v. Huntley,* 56 Vt.
454; *Johnston v. Hyde,* 33 N. J. Eq. 632; *Fowler v. Kent,*
71 N. H. 388, 52 Atl. 554; *Hartford W. Co. v. Bugbee,* 76
Vt. 61, 52 Atl. 554; *Tallon v. Hoboken,* 59 N. J. Law, 383,
36 Atl. 693; *King v. Ackroyd,* 28 Colo. 488, 66 Pac.
906; *Hague v. Nephi I. Co.* 16 Utah, 421, 52 Pac. 765;
Gould, Waters, § 320; *Lorain v. Walker,* 44 N. H. 201); and
that plaintiff's grant of 3,000 inches of water was of practical,
not theoretical, inches (*Jackson M. Co. v. Chandos,* 82 Wis.
444, 52 N. W. 759; *Janesville C. Mills v. Ford,* 82 Wis. 416,
52 N. W. 764).

TIMLIN, J.  The plea in abatement was disposed of by the
decision of this court in *Telulah P. Co. v. Patten P. Co.* 132
Wis. 425, 112 N. W. 522.  The defendant interposed a plea
of the statute of limitations and adverse possession, but also
interposed its counterclaim, which presented for investigation
and adjudication questions so interrelated with plaintiff's
claims under its several grants as to open up the whole sub-
ject for equitable consideration and decision.  Besides, the
wrong asserted by the plaintiff was continuing or constantly
recurring.  *Cedar Lake H. Co. v. Cedar Creek H. Co.* 79
Wis. 297, 48 N. W. 371; *Schuster v. Milwaukee E. R. & L.
Co.* 142 Wis. 578, 126 N. W. 26; *Ramsdale v. Foote,* 55 Wis.
557, 13 N. W. 557; *Gilman v. S. & F. du L. R. Co.* 40 Wis.
653; *Colrick v. Swinburne,* 105 N. Y. 503, 12 N. E. 427;
*Reed v. State,* 108 N. Y. 407, 15 N. E. 735.

The gist of plaintiff's action is that the defendant draws
from the passing water from day to day for its use more
water than it is entitled to under the terms of its prior grant,
thus diminishing the quantity to which plaintiff is entitled
from day to day.  Actions to recover damages thereby caused
which accrued more than the specified number of years before
the commencement of such action, actions to recover damages

for or to prevent the wrongful diversion of a watercourse, or actions to recover damages for or to restrain the taking of land by flowing it, and other kindred cases, would doubtless be barred after the like lapse of time. This is a case where both parties were using the water as of right, and the injury consists in one continuing from day to day to use more than his proper share of that which the forces of nature were engaged in consigning to the parties and other riparians and daily delivering along the accustomed channel. Each party used only the water for this particular purpose as it flowed by, and the volume was at times so great that the utmost use by either did not exceed his right and again so small that his use did encroach upon and impair the right of the other. No statute of limitations or of adverse possession, therefore, bars the plaintiff's action, and upon the question of laches each seeks affirmative relief and honors are quite even between the parties.

With reference to its grant of the residue from West, the plaintiff is in privity with its grantor, and, deriving its title through or under West, is bound by the decree in *Valley P. & P. Co. v. West,* reported in 58 Wis. 599 (17 N. W. 554). This is too elementary to require citation of authority. But plaintiff's grant of April 5, 1870, rests upon a different basis. West had made this grant prior to the litigation which resulted in the decree above mentioned, and his grantee, the then owner, was not a party to that suit. The plaintiff became the owner under this grant on June 9th, and under the grant of the residue on June 18, 1887, and West at no time since he parted with this interest to the Appleton Iron Company had any title or ownership therein. However physically connected or commingled in use at plaintiff's mill the avails of these grants are, the grants themselves are separate and distinct in law. The property involved in the litigation between the *Valley P. & P. Co. v. West* did not include that of the Appleton Iron Company under the grant of April 5,

1870. In judgments or decrees which do not determine status, but relate to the rights or interests of parties in and to certain property, privies are those who succeed to the ownership of that property or some right or interest therein under one of the parties to the litigation, directly or by mesne conveyances, by gift, by kinship, or by operation of law. Privity in such cases has reference to persons in their relation to property. *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599; *Grunert v. Spalding* (on rehearing), 104 Wis. 193, 205, 80 N. W. 589; *Dull v. Blackman,* 169 U. S. 243, 18 Sup. Ct. 333; *Whitney v. Brunette,* 15 Wis. 61. Hence the plaintiff as to its grant of April 5, 1870, in the foregoing schedule is not estopped or conclusively bound by the decree or decision mentioned. It has the ordinary right of any suitor to challenge the correctness of the decision of this court in the case referred to and to relitigate the matters determined by the circuit court in that litigation, to which no one of its predecessors in title was a party or privy.

It is found by the trial court and conceded by counsel on both sides of this controversy that the highest efficiency or greatest power can be obtained from any given volume of water at a stated head by taking that water through the bulkhead or flume to the wheel at a velocity of two feet per second. Within limits, an increase of velocity through a given aperture carries a greater volume and actually produces more power, but less power in proportion to the volume of water used. The effect of this increased velocity is to reduce the head and thus render the water used less effective. In the grant of August 27, 1864, West to Woodward, there was this language: "Said premises embracing fifteen feet of the south end of the bulkhead, together with the privilege of drawing from said bulkhead as much water as said Woodward, his heirs or assigns, may need for whatever machinery may be erected on said premises." Omitting extrinsic circumstances, two limitations are noticeable, viz.: the south fifteen feet of

the bulkhead, indicating that water must be drawn through an opening of this width, less such supports or sides as would be necessary and proper for that purpose, at the same time leaving the bulkhead its due support.  The other is that so much water may be drawn as Woodward or his assigns may need for whatever machinery may be erected on said premises. The appellant seeks by construction to add to this, viz.: "the water shall not be drawn at a greater velocity than two feet per second."  Machinery has been for a long time erected and in use on said lot, which machinery requires to operate it efficiently 492 theoretical horse power, and to produce such power requires 29,412 cubic feet of water per minute to be drawn through the flume.  This quantity in this time could only be drawn through by a velocity much exceeding two feet per second, and if the velocity were reduced to two feet per second the defendant would, through this opening, have only about one third of the power needed for the machinery erected on said lot.  If the defendant would remove its machinery and reduce its mill so that it would require about 123 horse power to operate it and put in wheels accordingly, the water would be drawn to the wheels at the rate of two feet per second, but the present velocity is the product of and caused by the magnitude or extent of the power needed to drive the machinery on said lot.  No doubt if the size of opening only was given and the volume of water not otherwise fixed by the terms of the grant, water should be taken at its most efficient velocity under the rule of *Appleton P. & P. Co. v. Kimberly & C. Co.* 100 Wis. 195, 75 N. W. 889.  But we have an express measure of the quantity of water to be taken, not referring to a yard stick of very accurate length, it is true, but nevertheless expressly referring to it.  In such case it is the office or function of interpretation to ascertain and declare only that which is doubtful.  In order to derive from this contract an implication that the velocity must be that most efficient, we must contradict the measure stated in the grant

or ignore it as if it did not exist. The head being known, to hold that the size of the opening is fixed by the grant, as I think we must, and at the same time that a velocity of two feet per second is implied, would be to fix the quantity of water and the resultant horse power with great certainty, to be sure, but would also be to measure the extent of the grant by a different measure than that specified in the written instrument by the parties thereto. This cannot be done. Definite provisions cannot be ignored or overborne and eliminated by implications of this kind which control more general grants to whose terms they are not contradictory. We cannot at this late day consider this grant grossly improvident or made with a view to more ancient conditions of manufacturing or machinery and without knowledge of the power which might be necessary to drive the machinery of a pulp mill. In the litigation mentioned between the parties to the original grant West made no such claim.

The defendant is now drawing water through an aperture of thirteen feet six inches in the south fifteen feet of said bulkhead, the remainder of the fifteen feet being taken up with the side walls or supports of the flume and opening in the bulkhead, but part of the timbers supporting these walls extend about sixteen inches outside of or beyond said fifteen feet, not, however, on the property of the plaintiff. The bottom of said opening is as it was at the time of the Woodward grant and where it has remained since. To narrow this opening to less than thirteen feet six inches would merely increase the velocity with which the water is taken, reduce still more the head, and require a greater volume of water to operate the machinery now on the Woodward lot. An opening of thirteen feet six inches is, we think, within the terms of the grant, and there is no equitable ground upon which the plaintiff can narrow the opening on account of the projection of the side timbers, which projection affects it not in the least. Treating the question as a new one, we should construe this grant as aforesaid. But the case of *Valley P. & P. Co. v. West,*

58 Wis. 599, 17 N. W. 554, is, under the rule of *stare decisis*, also a very potent authority in favor of such construction, and the construction put upon this grant by the parties thereunto after that decision and in that litigation and the long acquiescence of such original parties and of the plaintiff and defendant herein in that construction tend still further to support this view. The grant appears to have been loosely worded, but the defendant is not entitled to use any water under it except what is needed for the purpose of driving machinery on the said lot, and of course in a reasonable manner. We do not wish to be understood as deciding that the defendant, after having erected machinery on the Woodward lot requiring for its operation the specified horse power, could increase the volume of water to which it is entitled under this Woodward grant by thereafter erecting machinery on said lot requiring a greater horse power. This question was not argued and is not decided. See, however, Gould, Waters (3d ed.) § 318*a; Groat v. Moak,* 94 N. Y. 115; *Galloway v. Wilder,* 26 Mich. 97. All the other questions relative to the construction of the Woodward grant presented in this case were, we think, before this court in the case of *Valley P. & P. Co. v. West, supra,* including the velocity with which water was then being drawn through the bulkhead, which much exceeded two feet per second. But it was not proven in that case that at a stated head a given volume of water attains its maximum efficiency when drawn at the rate of two feet per second, nor that its power-producing efficiency under presently known mechanical appliances per volume diminishes when this velocity is increased, and the same arguments as are presented here were not then made. Nevertheless we believe the Woodward grant was properly construed in that case, and we discover no act of the defendant in violation of the Woodward grant as there construed. This makes it unnecessary to consider the question of estoppel which was argued.

The grant of December 29, 1879, from West to Fleming

was of "the right to draw from the canal and use for hydraulic purposes on the aforesaid tract of land so much water as not to exceed in all 200 horse power." In the same instrument was a covenant of warranty of quiet enjoyment and of title which described the thing granted as "200 horse power net." The defendant by mesne conveyances, none of which used the word "net," became the owner of this right. The circuit court held that this conveyed 200 available or practical horse power, equal to 250 horse power theoretical, and a majority of this court (not including the writer) agrees with such construction, upon the ground that the word "net" must be given some force, and its most appropriate office in this instrument is to designate actual or available horse power; and on the further ground that the words "horse power" in the granting clause of the instrument are ambiguous as meaning either available or theoretical horse power, and this word "net," in another part of the same instrument, may be taken to show the intention of the parties to grant available horse power.

The defendant's appeal is only from those portions of the judgment which determine (1) that defendant can under its grant of 1,000 inches of September 5, 1864, and its grant of seventy-five horse power of April 15, 1869, only use the water for driving machinery on the lots conveyed with such grants, and (2) that plaintiff can draw 31,702 cubic feet of water per minute under its grant of April 5, 1870, of 3,000 inches of water. The grant of September 5, 1864, was of a described parcel of land, "together with the right of taking so much water not exceeding 1,000 inches as" grantee "may need for any machinery which he or his assigns may erect on" the lot. That of April 15, 1869, the same, except the maximum is fixed at seventy-five horse power and the word "assigns" is omitted. Doubtless if we were convinced that "machinery which he (or his assigns) may erect on the lot" was used merely to measure the quantity conveyed, we would feel inclined to follow the cases of *Johnston v. Hyde,* 33 N.

J. Eq. 632; *Fowler v. Kent,* 71 N. H. 388, 52 Atl. 554; and *Hartford W. Co. v. Bugbee,* 76 Vt. 61, 56 Atl. 344. But the quantity was otherwise limited by express words of the grant. Or if the grant was merely of a certain quantity of water, we would be advised by the rule in *Luttrel's Case,* 2 Coke (Part IV) 86, cited in *Johnston v. Hyde, supra.* We have been cited to no case directly in point and have found none. But a *dictum* in *Valley P. & P. Co. v. West,* 58 Wis. 599, 17 N. W. 554, is in point. The language of the Woodward grant is similar, but in that grant there is no express limitation of volume or power by inches or horse power. It is in any view a question of intention of the parties to the original grants by West. Whether the public has a greater interest in having one large or several small factories seems a rather fanciful test of what the original parties to the grants intended. Deducing their intention from the language employed, it seems that the words "need for any machinery which he may erect upon the lot" indicate a design to grant the water for use to drive machinery only upon the designated lot. This might be of considerable advantage to the grantor in various ways, such as advancing in value his other adjacent lots, permitting him a larger residue by reason of inability or unwillingness to erect machinery on that lot, or in case of suspension of operations thereon, etc. We are satisfied that the learned circuit court construed these grants correctly, and the grantee must be limited to the use of the water upon the designated lot.

With reference to the findings of fact that in all said grants inches of water meant theoretical inches and horse power theoretical horse power, we find them supported by evidence and cannot undertake to reverse or change these findings. Upon this basis, the computation of the volume of water which plaintiff is entitled to draw at a head of ten feet, it is conceded, was correctly made and amounts to 31,702 cubic feet per minute.

It seems unnecessary to mention other matters. The conclusions of law of the circuit court, except as above modified, are all approved, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed. Attorneys' fees offset. No printing to be taxed, or other disbursement. Plaintiff to pay clerk's fees.

KERWIN, J., took no part.